### ADOLPH *v.* COOKWARE COMPANY OF AMERICA.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
   On appeal from judgment upon directed verdict for defendant, plaintiff's testimony must be accorded favorable consideration.

2. MASTER AND SERVANT—CONTRACTS—CONSIDERATION—COMPENSATION.
   Contracts of employment do not require any consideration beyond rendition of services to make them valid and compensation may be made in any form agreeable to the parties.

3. CONTRACTS—STATUTE OF FRAUDS—PERFORMANCE WITHIN A YEAR.
   In action to recover compensation under alleged contract of employment under plaintiff's testimony which indicated parties contemplated reducing contract to writing, unless such a writing was a condition precedent to the taking effect of alleged oral agreement, negotiations, if carried to point of mutual accord, could constitute a valid present contract especially where performance was entered upon and might not extend beyond a year (3 Comp. Laws 1929, § 13417).

4. FRAUDS, STATUTE OF—CONTRACTS PERFORMABLE WITHIN A YEAR.
   Provision of statute of frauds voiding every unwritten agreement which by its terms is not to be performed within a year does not apply to contracts which by any possibility are capable of being completed within a year, although the parties may have intended and thought it probable that it would extend over a longer period and it does so extend (3 Comp. Laws 1929, § 13417).

5. MASTER AND SERVANT—CONTRACT OF PERMANENT EMPLOYMENT—TERMINATION.
   Alleged contract of employment of plaintiff, an actively practicing chiropractor, to write a book and act as head of defendant manufacturer's health extension department *held*, a contract for permanent employment and, as such, for an indefinite period and, unless for a consideration other than promise of services, terminable at the will of either party.

6. CONTRACTS—CONSIDERATION.
   Action of plaintiff, a chiropractor, actively engaged in practice in another State in giving up his practice *held*, but an incident necessary on his part to place himself in a position to accept and perform contract to write a book and act as head of defendant manufacturer's health extension department and not a price or consideration paid defendant for the contract of employment.

7. SAME—REDUCTION TO WRITING—QUESTION FOR JURY.
   Whether alleged oral contract to employ plaintiff was fully agreed to and complete and the contemplated reduction to writing was to be but a memorial of the settled terms of the employment *held*, under plaintiff's testimony, a question of fact for the jury.

8. MASTER AND SERVANT — CONTRACT OF EMPLOYMENT — COMPENSA-
    TION.

   Under alleged contract of employment whereby plaintiff wrote a
       book and agreed to act as head of defendant manufacturer's
       health extension department in return for 2 per cent. of gross
       sales, if contract were found to exist as claimed, plaintiff
       would be entitled to contract compensation during period he
       rendered services thereunder up to time of discharge.

Appeal from Berrien; Evans (Fremont), J. Sub-
mitted January 7, 1938. (Docket No. 69, Calendar
No. 39,648.) Decided April 4, 1938.

Action by Herbert M. Adolph against Cookware
Company of America, a Michigan corporation, for
compensation for personal services. Directed ver-
dict and judgment for defendant. Plaintiff appeals.
Reversed with new trial.

*Thomas N. Robinson* and *Carl E. Schultz,* for
plaintiff.

*Gore, Harvey & Fisher,* for defendant.

WIEST, C. J. Claiming an oral agreement with
Dr. William A. Burnette, president of defendant
company, for permanent employment by the com-
pany and to receive for his services two per cent.
of the gross receipts from all sales made by the
company, and alleging his unwarranted discharge,
plaintiff brought this suit to recover such compen-
sation to the time of his discharge and the present
worth of prospective participation in the gross re-
ceipts from sales.

Defendant, by answer to plaintiff's declaration,
denied every averment essential to plaintiff's right
of action.

The issues came to trial before a jury and, at the close of plaintiff's proofs, on motion of defendant, the court directed a verdict for defendant.

The trial judge, in effect, held that an oral agreement, understood by the parties to be reduced to writing before becoming effective, was not a contract until so reduced to writing, and plaintiff could not recover under the alleged contract.

Plaintiff, in 1934, was a chiropractor in practice at Carrollton, Georgia, and had become interested in defendant's products. About January 1, 1935, at Chattanooga, Tennessee, plaintiff met William A. Burnette, president and general manager of defendant company, and claims that an oral agreement was made that he should write a book, to be published by the company, the writing to take two or three months and, when asked by Dr. Burnette: "How little do you suppose you could get along on until we get this thing going?" he said: "You really don't need to pay me anything at all."

However, it was arranged that plaintiff have $25 a week to defray his expenses, and was given a check for $25, which he said he would not use then and would wait until he started for Hartford, Michigan, the home town of the company.

We quote the following from plaintiff's testimony:

"After we had definitely settled the expense money," he (Dr. Burnette) said 'I think we ought to have something arranged.' And we both agreed we should have something arranged in writing on this. He asked me to write up a contract and send it to him, for his approval, and I told him that he being the president of the company, I thought it was up to him to write up the contract and send a copy to me, so I said, 'I would suggest that you write up your contract in two copies and send me one in conformity with what we have talked over, and if it is

satisfactory I will sign one and send it back.' Send both copies. I was to sign them both and send one back. And he agreed to do that, which would be very logical. That was the end of my contact with him at Chattanooga.''

January 19, 1935, plaintiff wrote defendant's president a letter, stating that he had arranged his affairs and could leave for Hartford one week ahead of previously contemplated schedule, and—

''In case of an emergency I may wire you for $25 while en route. I will explain the reason when I see you, otherwise hold everything till I arrive in Hartford. * * *

''What I cherish mostly is the opportunity you have given me to build up to a station in life in keeping with my ability, training and desire for the special work I have followed.

''The remuneration for my services is I feel a secondary matter. Judging from the way you have compensated other men who have made good in your organization I feel perfectly willing as stated to you before to let the matter of compensation rest with your judgment, and I shall have no doubt about getting a fair and square deal at all times.''

This letter does not indicate a completed contract for employment, but rather one having further negotiations in view.

On his way to Hartford, where the terms of his employment were to be considered and embodied in a written contract, he received a letter from the president of the company, dated January 15, 1935, in which it was stated:

''This will confirm our agreement that you are to come to the home office as soon as you find it convenient to do so—say within the next two or three weeks, and that you are to give your full time and attention to your work for the Company. As your

compensation, I agree to pay you $25 at the beginning. Any increase in pay will depend upon your worth to our organization.

"You are to work under my personal direction and if for any reason at any time you wish to terminate your connection with us you may do so by giving us two weeks' notice and if for any reason I wish to terminate your employment I may also do so by giving you a two weeks' notice.

"My idea is to make you the head of our health extension department. * * * I feel certain that we will get along splendidly if you are able to develop a practical business man's point of view regarding the development of this department."

When plaintiff reached Hartford on January 25, 1935, he was asked by Dr. Burnette if he had received that letter and stated that he had, and "that it was not in conformity with what we talked over and that we should have something definite in writing," and—"He (Dr. Burnette) said 'Well, you need not worry about anything, doctor, you are a valuable man to us and I don't want you to think for one minute you are not going to get a square deal. Just show us what you can produce.' He told me to go ahead with the preparation of this book, get that book started."

Plaintiff testified that the book was prepared by him and, on March 15, 1935, he said to Dr. Burnette:

"Now, Dr. Burnette you are going away to Europe and I want it definitely settled regarding my pay on a permanent basis as director of your health department. Now we have discussed matters pro and con from time to time up to this date. I have divulged to you practically all of my secret plans and ideas regarding this work, and the preliminary work including the writing of the book 'Healthward' and the establishment of the entire health service has

been set up all of which you have accepted as highly satisfactory, therefore I want it definitely settled how much my pay is going to be as a permanent employment (employee) here and as director of your health department.' * * * Then he said 'Your pay will be 2 per cent. of the gross sales of the corporation.' This was to be effective from March 15, 1935. * * * I asked him to put it in writing and he said that as he is going to Europe, he didn't have time, so many things coming up, and he requested that I just go along and not worry about anything, and when he got back from Europe, this matter would be put in writing and the $25 expense money that I was getting weekly for to cover my expenses would be deducted and applied on this condition, when he got back, and to go along on the $25 a week until he returned. * * * He wanted this conversation, this arrangement of 2 per cent. to be confidential because of personal reasons, and I respected his request in that regard and did not divulge that."

Dr. Burnette left for Europe about March 19, 1935, and soon thereafter disputes took place between plaintiff and Mr. Olyneic, secretary and treasurer and office manager of the company, relative to the publication of the book, and culminated, on May 10, 1935, in plaintiff's discharge by Mr. Olyneic, and ratification thereof by Dr. Burnette.

Can it be said as a matter of law that plaintiff's testimony failed to show a valid contract? The verdict having been directed against plaintiff on his own testimony we must, in this review, accord such testimony favorable consideration.

If plaintiff was hired by defendant company the alleged contract did not require any consideration beyond his services to render it valid and his compensation could be made in any form agreeable to the parties. It is manifest, under plaintiff's testi-

mony, that the parties contemplated, at least, a written memorial of their agreement but, unless they intended such a writing to constitute a condition precedent to the taking effect of the alleged oral agreement, then their negotiations, if carried to the point of mutual accord, could constitute a valid present contract, and especially so when performance was entered upon and might not extend· beyond a year.*

The uniform rule on this subject is well stated in the following decision:

"The mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that if, by any possibility, it is capable of being completed within a year, it is not within the statute, though the parties may have intended and thought it probable that it would extend over a longer period, and though it does so extend." *Smalley* v. *Mitchell,* 110 Mich. 650.

Plaintiff's proofs, taken as true, showed a contract for permanent employment. Such a contract is for an indefinite period and, unless for a consideration other than promise of services, the employment was terminable at the will of either party. *Lynas* v. *Maxwell Farms,* 279 Mich. 684, and cases there cited.

The action of plaintiff in giving up the practice of his profession was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment. *Lynas* v. *Maxwell Farms, supra; Lord* v. *Goldberg,* 81 Cal. 596 (22 Pac. 1126, 15 Am. St. Rep. 82).

Plaintiff claims that the preliminary employment in preparing the book had ended and services under

---

* See 3 Comp. Laws 1929, § 13417.—Reporter.

the alleged contract of permanent employment were thereafter commenced and rendered.

Whether the alleged oral contract was fully agreed to and was complete, and the subsequent writing was to be but a memorial of the settled terms of the employment, was, under plaintiff's testimony, a question of fact for the jury.

If found, as claimed by plaintiff, then, under such contract, he is entitled to the contract compensation during the period, if any, he rendered services thereunder, up to the time of his discharge on May 10, 1935.

The judgment is reversed and a new trial granted, with costs to plaintiff.

BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ. concurred.