Delbert J. McLAUGHLIN, Appellant,

v.

FORD MOTOR COMPANY, Appellee.

No. 13615.

United States Court of Appeals
Sixth Circuit.

July 27, 1959.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellant brought this action in the District Court to recover damages from the appellee, Ford Motor Company, hereinafter referred to as Ford, in the amount of $2,000,000 by reason of the alleged breach by the appellee of its promise to give appellant a position in general management in the Ford organization. Jurisdiction was based upon diversity of citizenship and the amount in controversy. The case was tried to a jury, with appellant's evidence in the first instance being limited to the issue of liability. Evidence on the question of damages was to follow if the evidence as to liability was sufficient to take the case to the jury. At the close of appellant's evidence on the issue of liability, the District Judge sustained appellee's motion for a directed verdict. This appeal was taken from the resulting judgment in favor of the appellee.

For some time prior to August 15, 1950, appellant held the position of Director of Planning and Methods in the General Motors Truck and Coach Division, which position he had attained after long-term service in various subordinate positions in the General Motors organization at widely scattered localities. On June 16, 1950, appellant wrote to Mr. Breech, vice president of appellee, with respect to a position with the Ford Foundation. This letter did not reach the Foundation, but was acknowledged by Mr. Beaver, manager, Salaried Personnel of Ford, by letter of June 22. About the middle of July appellant received a telegram from someone in Mr. Beaver's office asking that he come in for an interview. This resulted in a series of interviews between the appellant and various persons in the Ford organization.

In these interviews, appellant stated that his main interest was in "the general management field" where he had been most recently occupied. It was suggested to appellant that he take a position in Ford's finance group and that one of the ways to get into general management in the Ford Company would be to

Charles S. Toy, Detroit, Mich., Howell Van Auken, Detroit, Mich., on brief, for appellant.

George E. Brand, Detroit, Mich., William T. Gossett and Richard B. Darragh, Dearborn, Mich., of counsel, for appellee.

Before SIMONS and MILLER, Circuit Judges, and SHELBOURNE, District Judge.

go into finance first. With respect to compensation, appellant stated that he wanted $24,000.00 a year which, as far as he was concerned, could be made up in any proportion of base salary and bonus. Appellant was advised in these interviews that the base pay for executives was $13,200 and that any employment of him in the Ford organization would have to be passed upon by the Executive Committee which had to approve the employment of anyone on the executive level. He was also advised that in addition to the need of Executive Committee approval, an investigation of the appellant by the Industrial Relations Service Department would have to be made.

During the latter part of July appellant was advised that this investigation by the Industrial Relations Service Department was completed and that Ford wanted to employ him. A few days later appellant met Mr. O'Leary, who was an assistant in the Controller's Office, at the Ford Administration Building at Dearborn and was introduced to Mr. Victor Z. Brink, Assistant Controller of the Ford Motor Company. The three of them had lunch at the Dearborn Inn where Mr. Brink questioned appellant in considerable detail about his work at General Motors and asked him if he would be interested in taking the position of manager of the appellee's Cost Department. Appellant reiterated his interest in a general management position dealing with operations rather than in finance, and stated that he wasn't concerned about a position as manager of the Cost Department at that time. The three men left the meeting at Dearborn Inn with the matter still unresolved. They drove back to the Administration Building and went to Mr. Brink's office. Appellant testified that the following conversation then occurred:

"Mr Brink indicated that they— they had a need, a pressing need for a man in the Cost Department, to take over the managership in the Cost Department and that a man that had had general management

background and was familiar with all departments would be of considerable use to them in that activity, especially if he knew the cost work.

"And I told Mr. Brink and Mr. O'Leary, however, that my interests lay in the general management area, rather than in finance.

"Mr. Brink then said, 'Well, if you will take the managership of the Cost Department for a year, then, we will give you the general management job.'

"And I said to him, 'That's good enough for me.'"

Appellant later testified that Mr. Brink's full statement was, "If you will take the managership of the Cost Department for a year, and contribute what you can, then, we'll give you a job in general management." The date of September 1, 1950, was set for appellant to begin work.

Appellant reported for work at the Ford Motor Company on September 1, at which time Mr. Brink told him that the Executive Committee had set his base salary at $13,500 per annum. Appellant stated that this was all right, if the bonus allotment would be sufficient to bring it up to the $24,000 per year that he had said he would accept. Mr. Brink indicated that he was not conversant with that phase of the negotiations and appellant told Mr. Brink that if the deal wasn't going to go through the way they had agreed, it wasn't too late for Ford to pull out of the deal entirely. Mr. Brink left the office to talk with Mr. McNamara, controller of the Ford Motor Company, who was one of the men with whom appellant had previously conferred. When Mr. Brink returned he told appellant "that McNamara didn't like to commit on these things * * * but that I could be sure that my bonus would be satisfactory for 1950." Appellant replied, "Fine, then the deal is okay." Mr. Brink said, "Let's go down now and meet the people in the Department." They left Mr. Brink's office and went to the conference room on

the second floor of the Administration Annex where the key men from the Cost Department were congregated. Mr. Brink introduced appellant to the various people of the Cost Department, told them how pleased they were to get the appellant for the job as manager of the Cost Department and also told them that appellant would not be there too long because of other plans.

On September 6, 1950, appellant signed a form entitled "Employment Agreement" which contained, among other provisions, the following statement:

"I understand that my employment is not for any definite term and may be terminated at any time, without advance notice, by either myself or Ford Motor Company; that my employment is subject to such rules, regulations, and personnel practices and policies, and changes therein, as Ford Motor Company may from time to time adopt; and that my employment shall be subject to such lay-offs, and my compensation to such adjustments, as Ford Motor Company may from time to time determine."

Effective November 1, 1951, appellant's salary was increased to $14,850 per year. The written recommendation for this increase included the following "Remarks." "Since coming with the Company, Mr. McLaughlin has been Manager of the Cost Department, Controller's Office. In this position, he is responsible for the development of our cost accounting system and the preparation of unit cost reports. Mr. McLaughlin has demonstrated exceptional ability, both from a technical and administrative standpoint. He has been and is making an outstanding contribution in the development of our product costs. The increase in compensation is in recognition of his increasing value to the Company." The recommendation was approved by action of the Executive Committee.

Appellant continued as head of the Cost Department until March 1, 1953, during which time he realized that there was difficulty in getting appellee to carry out what he termed its commitment to him. About October, 1952, appellant talked with Mr. McNamara about the fulfillment of the commitment, who told him that there were some people ahead of him in connection with positions in the general management area, but that the Executive Committee was going to approve a new Division to produce another line of cars and that arrangements could be made to transfer him to the Lincoln-Mercury Division in connection with this new Division. He asked Mr. McNamara whether the general management of the new Division would be taken from this Lincoln-Mercury Division, and upon being answered in the affirmative, he said, "All right." However, the Executive Committee did not approve the new Division.

About January, 1953, Mr. Brink told appellant he could still go over to the Lincoln-Mercury Division and that his replacement had been brought in from one of the divisions for the Cost Department. Appellant told Mr. Brink that he was concerned about the fact that general management was not a part of the thing. However, a change in status report was prepared, dated February 9, 1953, effective March 1, 1953, by which appellant was transferred to the Lincoln-Mercury Division "to perform certain special project work in the Divisional Controller's Office." Appellant reported to the Lincoln-Mercury Division on March 1, 1953. About April, 1953, it was decided that the position of special assistant to the controller, which was held by appellant, was no longer necessary, and it was abolished on May 1, 1953.

In July, 1953, the position of controller of the Metuchen, New Jersey, plant was offered to appellant at the same salary as he was then making, but appellant turned it down because of its geographical location and because he did not feel that the position was in keeping with his past background and qualifications. Thereafter, a change in status form was prepared by Mr. Lorenz, controller of the Lincoln-Mercury Division, which after stating that the Central Comptroller's Office and Central Industrial Relations

had been consulted concerning other possible areas of placement and that appellant had been given the opportunity to talk with personnel in the Lincoln-Mercury Division and in other areas of the company in order to locate a proper position, closed with the following, "While Mr. McLaughlin would like to stay with Ford, the prospect of his doing so on a mutually satisfactory basis appear exhausted. Accordingly it is recommended that Mr. McLaughlin be terminated effective December 31st, 1953." The Executive Committee approved this termination on November 4, 1953.

Appellant received his full salary of $14,850 for 1953, plus a bonus of $7,500. For the forty months which he worked for the Ford Motor Company he received a total of $98,925, which was an average of $2,473.00 per month and $29,675 per year. Since January 1, 1954, appellant has had no employment capacity of any kind with the Ford Motor Company. Appellant's claim for damages is based upon his contention that positions in the Ford Motor Company's organization at the general management level carried compensation in the amount of $100,000 per annum and upwards, including regular salary and bonus; that appellant was born in July, 1901, and had a life expectancy in the year 1950 which would extend beyond the year 1966 when he would reach the retirement age of 65 years; and that appellee's refusal to carry out its contract deprived him of compensation of at least $100,000 per annum, together with other benefits consisting of payment of Country Club dues, company car, entertainment expense, Blue Cross and group life insurance, and retirement benefits.

Appellee's answer pleaded a number of special defenses, including the Statute of Frauds, that none of the employees of appellee with whom appellant negotiated in connection with his employment by appellee had any actual, implied or apparent authority to make the agreement relied upon by appellant, and that the agreement was for an indefinite term of employment and as a matter of law was at the will of the appellee. The District Judge carefully reviewed the evidence presented and the legal issues involved and concluded that each of these defenses was sustained on the basis of the evidence introduced by the appellant and, accordingly, directed the jury to find for the appellee.

■ We agree with the ruling of the District Judge that the oral contract herein sued upon falls within Sec. 2(1) of the Michigan Statute of Frauds, which declares void "Every agreement that, by its terms, is not to be performed in 1 year from the making thereof * * *", unless some note or memorandum thereof be in writing and be signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized. Mich.C.L.1948, Sec. 566.132; Mich. Stat.Anno., Sec. 26.922. It is clear that the oral agreement in the present case provided for employment to begin more than a year after the making of the agreement and comes squarely within the terms of the statute. Davis v. Michigan Mutual Life Ins. Co., 127 Mich. 559, 86 N.W. 1021; Gudenau v. Farm Crest Bakeries, Inc., 268 Mich. 399, 256 N.W. 462; Lawton v. Contract Purchase Corp., 298 Mich. 712, 720, 299 N.W. 777.

Appellant relies upon Reeck v. Caloy Corp., 329 Mich. 453, 45 N.W.2d 349, which apparently recognizes an exception to the general rule referred to above. The exception recognized by that case and in some other jurisdictions is that the oral agreement is not affected by the Statute of Frauds if it is supported by a consideration separate and apart from its performance, such as where the plaintiff has given up something to the defendant for which it would not be compensated unless the agreement was enforced. Appellant contends that his agreement falls within this exception because he gave up his employment with General Motors Corp. in order to accept the promised position with the Ford Company. We are of the opinion that this is not sufficient to bring the case

within the exception. The action of the appellant in giving up his position with the General Motors Corp. was only a necessary incident in placing himself in a position so that he might perform his agreement with the Ford Motor Company. This conferred no benefit upon the Ford Motor Company and was not a separate consideration passing from the appellant to the Ford Motor Company within the meaning of the rule. Lynas v. Maxwell Farms, 279 Mich. 684, 689, 273 N.W. 315; Adolph v. Cookware Co., 283 Mich. 561, 568, 278 N.W. 687. Although these cases do not involve the Statute of Frauds, we believe they clearly show what is meant by a consideration separate and apart from the performance of the agreement.

■ It will be noticed that the oral contract does not provide for a specified period of employment. In the absence of a special consideration passing from the appellant to the appellee, other than the services to be performed by the appellant, such contracts have been construed by the Supreme Court of Michigan as constituting an employment for an indefinite time terminable at the will of either party. Lynas v. Maxwell Farms, supra, 279 Mich. 685, 687, 273 N.W. 316; Adolph v. Cookware Co., supra, 283 Mich. 561, 568, 278 N.W. 687. We are of the opinion that the District Judge was also correct, under the ruling in those cases, in holding that irrespective of the Statute of Frauds the appellant had no cause of action under the terms of the agreement relied upon.

■ It will also be noticed that during the interviews leading up to the employment of the appellant, he was advised that any contract of employment at the executive level would have to be approved by the Executive Committee. Mr. Brink had no authority to bind the Ford Motor Company to a contract of this nature. No question of implied or apparent authority on his part exists, because no such representation was made by him, and the appellant knew that no such authority on the part of Mr. Brink existed.

Cudahy Brothers Co. v. West Michigan Dock & Market Corp., 285 Mich. 18, 27, 280 N.W. 93. Since the contract of employment in the position which appellant claims he was entitled to was never approved by the Executive Committee, there was no enforceable contract against the Ford Company for the claimed employment. Lawton v. Contract Purchase Corp., supra, 298 Mich. 712, 718, 299 N.W. 777.

Other reasons are advanced by the appellee in support of the ruling of the District Judge, but in view of the foregoing rulings it becomes unnecessary to discuss them.

■ Appellant included in his complaint as an alternate ground for relief, a second count for the excess of his services rendered appellee over and above the salary amounts paid him in the Cost Department, based upon a quantum meruit basis. This claim was disposed of by the District Judge on the ground that the express contract of the Cost Department position had been performed by the appellee, and therefore no basis existed for a claim on quantum meruit. In our opinion, the District Judge ruled correctly. Even though the record permits an inference that the promise of a position in management was part of the overall obligation created by the contract, this is of no help to the appellant in view of the fact that Ford reserved the right to cancel the contract at will, and did so. Appellant's agreement called for a position in the Cost Department at a stated salary. The services were performed and the salary agreed upon was paid. Appellant rendered no service in the general management position. No valid claim exists on the quantum meruit basis. Winchester v. Brown, 264 Mich. 421, 425, 250 N.W. 277; Goldblum v. United Automobile, Aircraft & Agricultural Implement Workers of America, Ford Local No. 50, 319 Mich. 30, 39, 29 N.W.2d 310.

The judgment of the District Court is affirmed.