HACKETT v FOODMAKER, INC.

1. APPEAL AND ERROR—MOTIONS—APPELLATE REVIEW—FACTS AND INFERENCES—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING VERDICT.

The Court of Appeals is required to view the facts and all legitimate inferences therefrom in the light most favorable to the nonmoving party when reviewing motions for a directed verdict or for judgment notwithstanding the verdict.

2. CONTRACTS—EMPLOYMENT—INDEFINITE PERIOD—TERMINATION—DISTINGUISHING FEATURES—PROMISES—CONSIDERATIONS.

Contracts for personal services for permanent employment or for life are considered indefinite hirings, terminable at the will of either party, unless there are distinguishing features, or promises, or a consideration in addition to the services to be rendered.

3. CONTRACTS—EMPLOYMENT—FUTURE EMPLOYMENT—REFUSAL—SINGLE ACTION—FULL SALARY—SIMILAR EMPLOYMENT.

A contract of employment to begin at a future time is totally broken by the employer's refusal to begin such employment at that time; on such refusal, the employee has a single action for his injury, measured by the full amount of salary or wages promised, less what he can earn by reasonable effort in other similar employment.

Appeal from Wayne, Theodore R. Bohn, J. Submitted May 6, 1976, at Detroit. (Docket No. 23706.) Decided June 24, 1976.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 886.

[2] 17 Am Jur 2d, Contracts §§ 80, 486.

53 Am Jur 2d, Master and Servant § 27 *et seq.*

Duration of contract of hiring which specifies no term, but fixes compensation at a certain amount per day, week, month, or year. 11 ALR 469, s. 100 ALR 834, 161 ALR 706.

[3] 53 Am Jur 2d, Master and Servant § 133.

Complaint by Dennis M. Hackett against Food-maker, Inc. for damages arising from breach of an employment contract. Judgment for plaintiff. Defendant appeals. Affirmed.

*Gage & Reizen* (by *William A. Roy*), for plaintiff.

*Kerr, Wattles & Russell* (by *James R. Dashiell*), for defendant.

Before: BRONSON, P. J., and D. E. HOLBROOK, JR. and D. F. WALSH, JJ.

D. E. HOLBROOK, JR., J. This appeal arises as a result of a jury verdict in the sum of $8,995 in favor of plaintiff and against the defendant for breach of an employment contract.

Defendant moved at the beginning of trial, at the close of plaintiff's proofs, and again at the termination of defendant's case, for a directed verdict. Following the verdict defendant moved for a judgment notwithstanding the verdict. All motions were denied by the trial court.

In reviewing the denial of motions for a directed verdict and for a judgment notwithstanding the verdict, this Court is required to view the facts and all legitimate inferences therefrom in the light most favorable to the nonmoving party. *McClure v Dukes,* 61 Mich App 339; 232 NW2d 704 (1975). Thus viewed, the facts indicate that plaintiff and defendant entered into a contract whereby plaintiff was to manage an Ypsilanti Jack-in-the-Box restaurant commencing in June of 1971. Plaintiff testified that following an interview with one Kurt Gustafson, coordinator of the Detroit area from January, 1970, to August, 1971, and the party responsible for the selection and training of management people, he was promised such position

and advised by Mr. Gustafson that the job was his and that all he needed to do to become manager of the Ypsilanti store was get to the Detroit area. The evidence further discloses that at that time plaintiff was a member of the United States Navy, serving as a photographer in San Diego, California. Also at that time plaintiff was working with defendant corporation in a Jack-in-the-Box restaurant in the San Diego area in conjunction with a work program sponsored by the Navy and in which Foodmaker, Inc., participated, the purpose of which was to ease a service member's transition from military to civilian life. Based upon Mr. Gustafson's promise that the job as manager of the Ypsilanti Jack-in-the-Box store would be plaintiff's providing he could get to Michigan, plaintiff obtained an early release from the Navy and moved his family, at considerable expense to himself, to Ypsilanti so as to undertake his new duties in June of 1971 when the new store was to be completed.

Upon arrival in Ypsilanti, however, plaintiff was advised that due to construction difficulties the Ypsilanti store was not yet open and that there would be some delay. Foodmaker, Inc., then made plaintiff a utility manager of various other stores in the Detroit area at a salary of $175 per week in which capacity plaintiff served in the absence of regular managers for such stores. Further, viewing the evidence in the light most favorable to the plaintiff, the record reveals that plaintiff, at some time thereafter and prior to the time that the Ypsilanti store was open, engaged in an anti-trust suit against the defendant whereupon plaintiff was subsequently advised by a representative of the defendant that anyone engaged in such suit would not receive a store. Apparently the Ypsilanti store

opened some time in October of 1971 and defendant employed another individual, who it felt would be more qualified, to serve as manager of that store. Plaintiff was retained as a utility manager until some time in January of 1972.

According to plaintiff it was his understanding that he might remain as manager of the Ypsilanti store as long as he possibly could. According to plaintiff under the terms of the agreement he was to receive management compensation in the amount of $225 per week as manager of the Ypsilanti Jack-in-the-Box restaurant plus a share of the profits.

On appeal defendant claims that at most plaintiff had shown an employment contract for an indefinite period of time terminable at will by either party.

In the alternative, appellant contends that if such contract was not terminable at the will of either party solely, because the plaintiff never commenced work under the contract, that plaintiff's damages should be limited to his lost earnings only until the time of his discharge by defendant. In support of these propositions defendant cites the cases of *Lynas v Maxwell Farms,* 279 Mich 684; 273 NW 315 (1937), *Adolph v Cookware Co of America,* 283 Mich 561; 278 NW 687 (1938), and *McLaughlin v Ford Motor Co,* 269 F2d 120 (CA 6, 1959).

It is true that the above cited authorities stand for the proposition that contracts for personal services for permanent employment or for life are considered indefinite hirings, terminable at the will of either party, in the absence of *distinguishing features* or promises or a consideration in addition to the services to be rendered. See *Lynas v Maxwell Farms, supra.* We find such a distin-

guishing feature here. In both *Lynas* and *Adolph* there was evidence indicating that services under the contract for personal employment were commenced by plaintiff. Here plaintiff was never afforded an opportunity to perform under the contract due to defendant's total repudiation thereof in that defendant never allowed plaintiff an opportunity to manage the Ypsilanti store.

Unable to locate any Michigan case law on point we look to 4 Corbin on Contracts, § 958, p 847, wherein we find the following:

"A contract of employment to begin at a future time is totally broken by the employer's refusal to begin such employment at that time. On such refusal, the employee has a single action for his injury, measured by the full amount of salary or wages promised, less what he can earn by reasonable effort in other similar employment."

Hence, we hold that, if a contract was proven by plaintiff that he was to become manager of the Ypsilanti store and was prevented from so doing due to defendant's repudiation thereof prior to the time any services were commenced, plaintiff has a right to recover. Review of the trial court's instructions to the jury indicates that the trial judge followed Corbin, *supra,* to the letter.

Nor are we impressed with defendant's argument that *McLaughlin v Ford Motor Co, supra,* controls the instant case. There it appears that a condition of plaintiff's employment was the subsequent approval by a third party within the defendant corporation, which subsequent approval never transpired. Viewing the evidence, in the case at bar, in a light most favorable to the plaintiff, no such condition existed.

Defendant's assertion that if the contract be-

tween plaintiff and defendant was not terminable at the will of either party then because plaintiff was prevented from commencing work, his damages should be limited to lost earnings to the time of discharge is similarily without merit. In this case there were in reality two contracts: one to serve as manager of the Ypsilanti store, and one to serve as utility manager for defendant until such store opened.

Defendant's liability on the contract to manage the Ypsilanti store is to be determined in accordance with the criteria set forth in 4 Corbin on Contracts, § 958, p 847, *supra,* and the jury was so instructed. Hence, *Adolph v Cookware Co of America, supra,* does not control for there the Court held that if a contract as claimed by plaintiff was found to exist that plaintiff was entitled to compensation during the period he rendered services under such contract until his date of termination. Here, under the contract to operate the Ypsilanti store, plaintiff's services never commenced due to defendant's repudiation thereof, and the trial court's instructions to the jury herein limited plaintiff's damages to those suffered as a result of his inability to ever commence performance of the contract to operate the Ypsilanti store because of defendant's repudiation.

Accordingly we find no reversible error on the part of the trial court in denying defendant's motions for a directed verdict and its motion for judgment notwithstanding the verdict.

Affirmed. Costs to appellee.