Worth H. PERCIVAL, Appellant,

v.

GENERAL MOTORS CORPORATION, a corporation, Appellee.

No. 75–1879.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1976.

Decided July 21, 1976.

*Ryan v. Shea*, 525 F.2d 268, 275 (10th Cir. 1975).

Norman C. Parker, St. Louis, Mo., for appellant; Mary Ann Weems, St. Louis, Mo., on brief.

James E. McDaniel, St. Louis, Mo., for appellee; Doris J. Banta, St. Louis, Mo., and J. R. Wheatley, Detroit, Mich., on brief.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.[*]

HENLEY, Circuit Judge.

Worth H. Percival, appellant here and plaintiff below, brought this action in the United States District Court for the Eastern District of Missouri against the defendant, General Motors Corporation, to recover actual and punitive damages for allegedly wrongful discharge from his employment at an executive level. Subject matter jurisdiction was predicated upon diversity of·citizenship and the requisite amount in controversy.

Prior to answering the complaint the defendant moved for summary judgment under Fed.R.Civ.P. 56(b). The motion was submitted to the district court[1] on affidavits tendered by the defendant and on counter-affidavits submitted by plaintiff. The motion was granted and judgment for the defendant was entered. *Percival v. General Motors Corp.*, 400 F.Supp. 1322 (E.D.Mo. 1975). Plaintiff appeals.

The historical facts of the case are not in dispute.

Mr. Percival is a mechanical engineer by profession and holds a Master's Degree from Massachusetts Institute of Technology. He was first employed as an engineer by General Motors in 1947 and remained in that employ until the employment relationship was terminated in 1973. At the time of the termination plaintiff was the head of the defendant's Mechanical Development Department and had held that position

---

* ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation.

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

since 1968. But for his termination he probably would have remained in the employ of the company until 1985 when he would have been eligible for retirement or might have been required to retire.

In 1973 disagreements arose between Mr. Percival and other top management personnel of General Motors. Discussions were held, and plaintiff was offered another position with the company. He was unwilling to accept that position and ultimately resigned; in connection with his resignation he accepted a cash payment. He commenced this suit in 1975.

Plaintiff contended in the district court and contends here that he was actually discharged from his employment, and that his discharge was wrongful and malicious. However, he does not contend that the alleged discharge was prohibited by any federal or state statute or by any collective bargaining agreement.[2] He denies that his employment was at the will of the defendant, but argues that even if it was his discharge was violative of the public policy of the State of Michigan.[3]

Specifically, plaintiff contends that he was discharged as a result of a conspiracy among his fellow executives to force him out of his employment because of his age and because he had legitimately complained about certain allegedly deceptive practices of General Motors, had refused to give the government false information although urged to do by colleagues and superiors, and had, on the contrary, undertaken to correct certain alleged misrepresentations made to the government by the defendant.

In resisting the claim of the plaintiff the defendant took alternative positions. It claimed that plaintiff was not discharged but resigned voluntarily, that if he was discharged, General Motors had proper grounds for its action, and that in any case plaintiff's employment was terminable at the will of General Motors for any reason

and with or without cause, provided that the discharge was not prohibited by statute.

As far as this appeal is concerned, the narrow question presented is whether the district court erred in granting the defendant's motion for summary judgment.

The principles that are to be applied by a federal court in passing upon a motion for summary judgment are familiar.

In the recent case of *Windsor v. Bethesda General Hospital*, 523 F.2d 891 (8th Cir. 1975), a case arising under Title VII of the Civil Rights Act of 1964, we said, 523 F.2d at 893, n.5:

> "Summary judgment is an extreme remedy, one which is not to be entered unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Ozark Milling Co. v. Allied Mills, Inc.*, 480 F.2d 1014, 1015 (8th Cir. 1973). [Citations omitted.] In *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962), the Supreme Court set forth the standard that should be applied when one party to a lawsuit in federal court makes a motion for a summary judgment:
>
> > Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that [except as to the amount of damages] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.Rules Civ.Proc. This rule authorizes summary judgment "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, . . . [and where] no genuine issue remains for trial . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really

---

**2.** As an executive employee, plaintiff was not covered by collective bargaining agreements between labor unions and General Motors.

**3.** Both sides appear to agree that the substantive rights of the parties are governed by Michigan law.

have issues to try." *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 [64 S.Ct. 724, 728, 88 L.Ed. 967] (1944).

■ In passing upon such a motion the court is required to view the facts in the light most favorable to the party opposing the motion and to give to that party the benefit of all reasonable inferences to be drawn from underlying facts. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Oskey Gasoline & Oil Co. v. Continental Oil Co.*, 534 F.2d 1281 (8th Cir. 1976); *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396, 397 (8th Cir. 1976).

■ While a party who moves for summary judgment has a heavy burden of persuasion, nevertheless, his motion should be granted if the district court is satisfied to the requisite degree of certainty that the record presents no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law. As we said in *Lyons v. Board of Ed. of Charleston, etc.*, 523 F.2d 340, 347 (8th Cir. 1975):

> Thus, although we have repeatedly emphasized that summary judgment is an extreme remedy, not to be employed unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances, *Ozark Milling Co., Inc. v. Allied Mills, Inc.*, 480 F.2d 1014 (8th Cir. 1973) and cases therein cited, we recognize as well, its salutary purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine, material fact issue to be tried.

*See also Thompson v. Sun Oil Co.*, 523 F.2d 647, 649 (8th Cir. 1975).

In view of those principles, the district court was required to assume, and we are required to assume that the plaintiff was discharged and that he did not voluntarily resign his position, and that his discharge was arbitrary and capricious and was improperly motivated. To put it another way, it must be assumed that in 1973 Mr. Percival was still a capable and efficient employee and was running his department in a satisfactory manner, and that he lost his job simply because his superiors wanted to replace him or because he refused to give false information to the government or undertook to correct misinformation that the defendant had disseminated to the government.[4]

■ The record reflects that plaintiff was actually hired on a month to month basis. It appears to us, however, that plaintiff had a right to expect to be continued in employment as long as he performed satisfactorily or until he reached retirement age, and we will assume for purposes of this case that he was employed on those terms. In Michigan such an employment is an employment at will and may be terminated by either party at any time with or without cause. *McLaughlin v. Ford Motor Co.*, 269 F.2d 120 (6th Cir. 1959); *Ambrose v. Detroit Edison Co.*, 367 Mich. 334, 116 N.W.2d 726 (1962); *Adolph v. Cookware Co. of America*, 283 Mich. 561, 278 N.W. 687 (1938); *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937). Whether an employee has performed satisfactorily is to be determined by the employer and not by the courts. *Lynas v. Maxwell Farms, supra*, 273 N.W. at 317. The district court characterized plaintiff's employment as having been at will, and we are satisfied that it did not err in so doing.

In applying the general rule that a person who is employed at will may be discharged at any time with or without cause and without regard to the motivation of the employer in terminating the employment relationship, the district court took note of a "newly emerging theory" advanced by plaintiff to the effect that the general rule should not be applied to a case in which the discharge violated public policy. The theory is that even if an employer has a general

4. Naturally, we express no opinion as to the truth of the facts assumed, and we note that the defendant emphatically denies the truth of plaintiff's assertions.

right to discharge an employee without cause or justification, a discharge is wrongful and actionable if it is motivated by the fact that the employee did something that public policy encourages or that he refused to do something that public policy forbids or condemns. That there is some support for this theory in the cases cannot be denied.

In *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549, 62 A.L.R.3d 264 (1974), the court held that a discharge of an at will employee is wrongful and constitutes a breach of contract where the discharge is motivated by bad faith or malice or is retaliatory in nature. Specifically, the court held that the discharge of a female employee was wrongful when the reason for it was that she refused to have sexual relations with her foreman who was a friend of the employer's personnel manager.

In *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), a discharge was held wrongful where it was brought about by the fact that the employee had filed a claim under the state workmen's compensation statute.

Another recent case, cited in plaintiff's brief, is *Nees v. Hocks*, 536 P.2d 512 (Or. 1975), wherein it was held that a discharge of an employee because she went on jury duty was wrongful.

In *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), the plaintiff contended that he had been wrongfully discharged because he had insisted upon giving warnings with respect to a new company product that he considered dangerous. While the court recognized at least up to a point the validity of the theory advanced by plaintiff here, the discharge of the employee was upheld on the basis of the fact that in the circumstances it did not violate any clear mandate of public policy.

And in the earlier case of *Peterman v. International Brotherhood of Teamsters*, 174 Cal.App.2d 184, 344 P.2d 25 (1959), the court held wrongful the discharge of an at will employee on account of the fact that he had refused to commit perjury.

The reasoning of the district court in refusing to apply plaintiff's public policy theory to this case is set out in the published opinion of that court, 400 F.Supp. at 1324, and the district court's statements in that connection need not be repeated here.

█ It may be conceded to plaintiff that there are strong policy arguments that can be made in support of the theory which he invokes; there are also strong policy arguments that can be made against it. It should be kept in mind that as far as an employment relationship is concerned, an employer as well as an employee has rights; and it should also be kept in mind that a large corporate employer such as General Motors, except to the extent limited by statute or contractual obligations, must be accorded wide latitude in determining whom it will employ and retain in employment in high and sensitive managerial positions particularly where developments in the field of mechanical engineering are involved.

█ Apparently the courts of Michigan have not yet either adopted or rejected plaintiff's public policy theory. In determining whether to apply that theory to this case the district court was not called upon to decide a disputed question of fact; rather, it was called upon to predict what the Michigan courts would hold were the question presented to them.

█ We do not think that the district court was required to predict that Michigan will adopt plaintiff's theory in general or would apply it to the facts of this particular case, and we deem it inappropriate for us to make such a prediction. We conclude that no error was committed when the district court applied the general rule that has been mentioned.

█ Plaintiff argues that his complaint states a claim for malicious procurement of his discharge. Such a claim might properly have been advanced against plaintiff's colleagues and superiors, but they are not parties to this action. In each case cited by plaintiff the defendant was a third party and not the former employer of the plaintiff.

The judgment of the district court will be affirmed.

Affirmed.