Peter KOVACS, Plaintiff,

v.

ELECTRONIC DATA SYSTEMS
CORPORATION, a Texas
Corporation, Defendant.

Civ. A. No. 89–3677.

United States District Court,
E.D. Michigan, S.D.

June 28, 1990.

**162**

John C. Eidt, Eidt & Baylor, Southfield, Mich., for plaintiff.

Robert B. Cassey, Electronic Data Systems Corp., Southfield, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

SUHRHEINRICH, District Judge.

This matter is before the Court on a motion to dismiss filed by defendant Electronic Data Systems ("EDS"). Plaintiff Peter Kovacs ("Kovacs") has responded. Pursuant to Local Rule 17(1)(2), the matter will be decided without oral argument.

In the instant action, plaintiff claims that he was wrongfully discharged from employment with EDS. Kovacs began his employment on October 1, 1986 when his former employer, National Data Corporation, was sold to EDS. Prior to the commencement of his employment with EDS, plaintiff completed a job application form. In signing the application form plaintiff acknowledged that he understood his "EM-PLOYMENT WITH THE COMPANY IS AT WILL AND THE EMPLOYMENT RELATIONSHIP MAY BE ENDED BY EITHER PARTY, AT ANY TIME WITH OR WITHOUT NOTICE." (Emphasis in original.) That same day plaintiff also executed a formal Employee Agreement. The Agreement stated that the employment relationship between plaintiff and EDS "may be terminated at will, with or without cause at any time...." (Employee Agreement, ¶ 7.) The Agreement also stated: "It is further agreed that this Agreement may be modified or amended only by a written instrument executed by EDS and Employee, *and approved in writing by an Officer of EDS.*" (Emphasis added.)

Plaintiff was located in Fairfield, New Jersey when his employment with EDS began on October 1, 1986. Thereafter, it was announced that the New Jersey facility would be closed and that the site was to be transferred to Detroit. George Schooler, the New Jersey Data Center Manager discussed with plaintiff and his wife the possibility of continuing their employment with defendant in the Detroit area. Plaintiff and his wife met with George Schooler to discuss the transfer opportunity. During the meeting plaintiff raised several concerns he had were he to consider moving to Detroit. Plaintiff mentioned that he had just purchased a home in New Jersey and had been living in it, at that time, less than one year.

Schooler encouraged plaintiff to visit the Detroit area before deciding to make the transfer. Plaintiff claims that Schooler told him that EDS would take care of plaintiff's New Jersey home if he could not sell it. Plaintiff and his wife visited Detroit and upon their return plaintiff accepted the position.

Plaintiff and his wife moved to Detroit in July/August 1988, where they were provided with a corporate apartment and company car. Plaintiff and his family lived in the corporate apartment from July 1988 until late March 1989. EDS, through Empire America, purchased plaintiff's New Jersey home in February 1989. The purchase price was $145,000, which resulted in a

$5,000 loss to plaintiff. As a result of this loss, defendant gave plaintiff a check for $5,000, in consideration of which plaintiff signed a promissory note. The note provided that the $5,000 given to plaintiff would be forgiven in yearly increments if plaintiff agreed to remain with defendant for three years. The promissory note also stated: "The maturity date of this note shall be the date, if any, upon which Borrower's employment with Electronic Data Systems Corporation, or any subsidiary or affiliate thereof, is terminated voluntarily by Borrower or for *good cause* by EDS." (Emphasis added.)

Upon transferring to Detroit, plaintiff worked as a shift supervisor/manager on the third shift. In January 1989, plaintiff became Operations Manager, and he began reporting directly to George Schooler. Plaintiff received a 12% pay raise and became responsible for managing approximately 40 people. In March 1989, plaintiff began reporting to Doug Klaus, after Schooler was transferred.

During the summer of 1989, plaintiff was accused of impeding his subordinates' free, uninhibited use of the Company's Open Door Policy. This policy provides that employees are encouraged to bypass their immediate supervisors and address their concerns on virtually any issue to upper level management. Supervisors are instructed that they must not inhibit the use of the policy by any employee. Plaintiff allegedly chastised one of his subordinates, Kathy Gothard, for making use of the open door policy to meet with plaintiff's supervisor regarding an allegedly racially related remark that plaintiff had made. One month later, another of plaintiff's subordinates, Suzanne Austin, used the open door policy to advise plaintiff's supervisor that she heard plaintiff leaking confidential information regarding EDS' profit margin. After learning of this meeting, plaintiff allegedly called Austin into his office and angrily voiced his displeasure with her action.

Plaintiff contends that no investigations have been conducted in either incident and that the complaints against him have not been factually substantiated. Defendant on the other hand counters that an investi-gation into the underlying facts was carried out and that plaintiff was then confronted. Plaintiff's supervisors asked him if he wished to be placed in a performance improvement plan. Plaintiff declined to do so, and was terminated on September 1, 1989.

### Analysis

Defendant brings the instant motion for summary judgment pursuant to Fed.R. Civ.P. 56. Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis of its motion and of pointing out those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is no express or implied requirement, however, that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* After such a showing is made, the nonmoving party must go beyond the pleadings to designate, by affidavit, deposition, interrogatory, or otherwise, "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. Summary judgment may be granted where the evidence is merely colorable or is not significantly probative. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); but all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

### I.

### Breach of Contract Claims

A. *Nature of Plaintiff's Employment with EDS*

Counts I and IV of plaintiff's complaint allege the existence of an express contract

whereby plaintiff would not be terminated except for cause. Under Michigan law, it is well settled that in the absence of circumstances to the contrary, an employment relationship is presumed to be terminable at will; that is, terminable by either party at any time for any or no reason. *Lynas v. Maxwell Farms*, 279 Mich. 684, 273 N.W. 315 (1937); *Michigan State Employees Assoc. v. Dep't of Mental Health*, 421 Mich. 152, 365 N.W.2d 93 (1984). *See also Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 610, 292 N.W.2d 880, *reh'g denied*, 409 Mich. 1101 (1980) (noting that "[e]mployers are most assuredly free to enter into employment contracts terminable at will without assigning cause"). In the instant case, EDS argues that it took the action expressly approved in *Toussaint* and entered into a contract with plaintiff making his employment terminable at will, pointing to the express language of the employment application and the employment contract. Defendant therefore argues that when plaintiff accepted a position with EDS, his employment was subject to the terms and conditions set forth in those documents. *See Batchelor v. Sears, Roebuck & Co.*, 574 F.Supp. 1480, 1484 (E.D.Mich.1983), *aff'd sub nom Reid v. Sears, Roebuck & Co.*, 790 F.2d 453 (6th Cir.1986); *see also Novosel v. Sears, Roebuck & Co.*, 495 F.Supp. 344 (E.D.Mich.1980).

■ Plaintiff contends, however, that despite the express language of the employment contract, defendant could terminate his employment only for just cause. In support plaintiff cites to subsequent oral statements allegedly made by George Schooler that plaintiff would have a career in Detroit as long as he performed. Plaintiff further alleges that in order to reassure this promise, Schooler told plaintiff that EDS would take care of his New Jersey home if he could not sell it. Plaintiff claims that these statements by Schooler created legitimate expectations in Kovac's job security and played a role in his decision to move to Detroit.

The Court finds that even if such statements were made, they fail as a matter of law to alter the at-will nature of the employment relationship existing under the terms of plaintiff's employment contract. Employment contracts containing essentially the same language ·as that signed by Kovacs have routinely been found by the state and federal courts in Michigan to destroy the at-will nature of the employment relationship. *See Vollrath v. Georgia–Pacific Corp.*, 899 F.2d 533 (6th Cir. 1990); *McCormick v. Sears, Roebuck & Co.*, 712 F.Supp. 1284 (W.D.Mich.1989); *Batchelor, supra; Summers v. Sears, Roebuck & Co.*, 549 F.Supp. 1157 (E.D. Mich.1982); *Novosel, supra; Eliel v. Sears, Roebuck & Co.*, 150 Mich.App. 137, 387 N.W.2d 842 (1985). In each of these cases, courts have entered summary judgment for the employer. *Id.*

■ Plaintiff argues that under Michigan law, defendant's anti-modification clause is unenforceable citing *Morley Bros. v. Construction Co.*, 266 Mich. 52, 253 N.W. 213 (1934). *Morley Bros.* held that a contract provision not to vary the terms of a contract unless agreed to in writing does not necessarily preclude a parol bargain to alter the contract. Here, however, the employment agreement signed by Kovacs contains additional language which renders his reliance upon *Morley Bros.* inapposite. That additional language requires approval by an officer of EDS before any modification to the employee agreement may become effective. Thus, the oral assurance is ineffective as a matter of law.

A comparison with *Batchelor, supra,* dictates this result. In that case, the contract before the court contained "a provision limiting the *individuals authorized to modify the contract,* not the manner in which it may be modified." 574 F.Supp. 1480, 1486 n. 5 (emphasis in original). The *Batchelor* court held that the defendant was not bound by any alleged modification to the contract by a person without authority to do so. *Id.* at 1486; *see also McCormick, supra,* 712 F.Supp. at 1288, *citing Eliel, supra; Vollrath, supra,* 899 F.2d at 535. In the instant case it is undisputed that George Schooler is not and has never been

an officer of EDS. (Affidavit of George Schooler, ¶ 3, 4.)

▮ Nor does the promissory note executed on March 1, 1989 alter this result. The note states in part that the maturity date for the note is the date "upon which borrower's employment ... is terminated voluntarily by Borrower or for *good cause* by EDS." (Emphasis added.) Plaintiff claims the "for good cause" language clearly indicates a modification of the at-will terminology in the original employment contract between plaintiff and EDS. The Court does not agree. First, a careful reading of the promissory note reveals that the "just cause" language is employed there to define whether the financial obligation must be repaid upon termination. Second, the note was not approved in writing by an officer of EDS. Therefore, based on the foregoing authority, the evidence fails as a matter of law to alter the at-will relationship between plaintiff and defendant.

▮ Plaintiff also argues that he tendered consideration greater than the promise to render services in exchange for compensation, and therefore an inference can be made that the employment contract was not terminable at will. Specifically, plaintiff claims that his move to Detroit was in exchange for Schooler's representations that job security existed in the Detroit area. Thus, plaintiff claims that his moving to Detroit constitutes a form of consideration beyond rendering services for compensation.

The Court finds that plaintiff's having moved his family to Detroit is not sufficient additional consideration upon which to base a claim that the at-will status of his employment was modified. Rather, plaintiff's action "was but an incident necessary on his part to place himself in a position to accept and perform the contract and not a price or consideration paid to defendant for the contract of employment." *Adolph v. Cookware Co. of America*, 283 Mich. 561, 568, 278 N.W. 687 (1938) (giving up practice of profession and moving to another city not sufficient consideration to change at-will nature of employment). In fact, if plaintiff did not move to Detroit to work for EDS, he would have been unemployed because the facility where he worked for EDS in New Jersey was being closed. (Deposition of Peter Kovacs at pp 59, 62, 69.)

Plaintiff's reliance on *Hackett v. Food Maker, Inc.*, 69 Mich.App. 591, 245 N.W.2d 140 (1976), *lv. denied* 399 Mich. 823 (1977), is misplaced. In *Hackett*, the court stated that under Michigan law contracts for permanent employment are considered indefinite hirings, terminable at the will of either party, absent "distinguishing features" or promises or a consideration in addition to the services to be rendered. *Hackett*, 69 Mich.App. at 594, 245 N.W.2d 140. *Hackett* does not support plaintiff's position, however. In *Hackett*, the court did not address the issue of whether plaintiff had furnished additional consideration to alter the status of his employment. The court simply held that the defendant's total repudiation of its contract with the plaintiff before services commenced was a "distinguishing feature" which permitted the plaintiff to recover. *Id.* at 594–95, 245 N.W.2d 140.

Rather, the instant case is more closely analogous to a case cited and distinguished in *Hackett, Adolph v. Cookware Co. of America*, 283 Mich. 561, 278 N.W. 687 (1938). *Hackett* distinguished *Adolph* on the basis that in the latter case the evidence demonstrated that services under employment contract by plaintiff had already begun. Similarly in the instant case, plaintiff commenced employment with EDS in Detroit. Therefore, the "distinguishing feature" in *Hackett* is not present in the instant case.

**B. Other Promises to Plaintiff by EDS**

▮ In his complaint plaintiff contends that EDS failed to purchase his home in New Jersey. Plaintiff admitted in his deposition that the New Jersey home was purchased by EDS, through Empire of America, on February 9, 1989. (Kovac Dep. at 114–16.) In fact, EDS not only purchased plaintiff's home, but also gave plaintiff and his family free temporary housing from

July/August, 1988 to late March 1989. Plaintiff claims that he was promised certain benefits as a result of his move to Detroit, including legal fees and closing costs relating to the sale of his New Jersey home. In a letter to Schooler, however, plaintiff admitted he understood that "in fact there is nor was any guarantee that I would receive such benefits anyway." Thus, the Court finds that plaintiff's own admissions establish that EDS did not break any promise to purchase plaintiff's home or to pay legal fees or closing costs. Thus, summary judgment with respect to these claims must be granted in favor of EDS.

## II.

### Fraud and Misrepresentation Claims

■ Plaintiff alleges that the promise made by George Schooler that EDS would purchase plaintiff's New Jersey home meant that the home would be bought by EDS in July 1988. He further argues that because the house was purchased by EDS in March 1989, this establishes that Schooler's promise was made in bad faith without present intention of performance. In the instant motion defendant contends that plaintiff has no evidence to support this fraud claim.

■ An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact. *Hi–Way Motor Co. v. International Harvester*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976). In order to establish such a claim, a plaintiff must show:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it, and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to recovery.

*Hi–Way Motor Co.*, 398 Mich. at 336, 247 N.W.2d 813 (quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141 (1919)). The burden of proof rests with plaintiff. Fraud will not be presumed but must be proven by clear and convincing evidence. *Hi–Way Motor Co.*, 398 Mich. at 336, 247 N.W.2d 813. Moreover, a future promise may constitute fraud only if it is made in bad faith without present intention of performance. *See Hi–Way Motor Co.*, 398 Mich. at 337–38, 247 N.W.2d 813; *Higgins v. Lawrence, P.C.*, 107 Mich.App. 178, 309 N.W.2d 194 (1981).

Plaintiff's claim fails for several reasons. First, at most, all plaintiff can show is that the alleged promise was not performed. The nonperformance of a promise, however, is not fraud nor is it any evidence of fraud. *Higgins*, 107 Mich.App. at 185, 309 N.W.2d 194, (quoting *Leib v. Bostwick*, 256 Mich. 277, 280, 239 N.W. 405 (1931)). Moreover, the evidence of alleged fraudulent intent must relate to the alleged conduct of Schooler "at the very time of making the representations, or almost immediately thereafter." *Hi–Way Motor Co.*, 398 Mich. at 338–39, 247 N.W.2d 813. Second, plaintiff admits that EDS purchased his New Jersey home (Kovac Dep. at 114–116), and that there was never any guarantee that EDS would pay legal fees or closing costs relating to the sale or purchase of any home by plaintiff. (Ex. 6; Ex. 3.)

Third, the alleged statements by Schooler that plaintiff had a job as long as he performed, without more, merely expresses the wish that plaintiff's employment would be satisfactory and have a long duration. *Carpenter v. American Excelsior Co.*, 650 F.Supp. 933, 936 n. 6 (E.D.Mich.1987). Fourth, plaintiff has essentially admitted that Schooler had nothing to do with his termination from EDS. (Kovacs Dep. at 161–62.) Thus, there is no basis to infer that Schooler acted in bad faith by making hollow promises. Finally, plaintiff cannot demonstrate that he reasonably acted in reliance upon Schooler's alleged statement. The language in the formal employment contract stating that its terms could only be modified in writing with the approval of

an officer of EDS, signed by plaintiff, precludes such an assertion. *See Novosel,* 495 F.Supp. at 346 (based on language in employment contract there was no way that plaintiff could reasonably have had a legitimate expectation of a right to a just cause determination prior to termination). The Court therefore finds that plaintiff has failed to come forward with any evidence to support his fraud claim, so as to preclude summary judgment.

### III.

#### *Intentional Infliction of Emotional Distress*

■■■■ Mental distress damages for breach of contract generally are not recoverable in Michigan. *Valentine v. General American Credit,* 420 Mich. 256, 263, 362 N.W.2d 628 (1984). Moreover, mental distress damages are not recoverable "where the actor does no more than invest upon his own legal rights." *Reid.* 790 F.2d at 462 (quoting *Ledl v. Quik Pik Stores,* 133 Mich.App. 583, 349 N.W.2d 529 (1984)). There is a narrow exception to the rule, however, where the contract "has elements of personality" and the "damage suffered upon the breach of the agreement is capable of adequate compensation by reference to the terms of the contract." *Id.* 420 Mich. at 261–62, 362 N.W.2d 628. In the instant case, plaintiff has not offered any evidence to support his intentional infliction of emotional distress claim. Therefore, summary judgment pursuant to Fed.R. Civ.P. 56 is appropriate.

Accordingly,

IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED.