The GLIDDEN COMPANY, Plaintiff,

v.

Michael J. JANDERNOA; William C. Swaney; Ralph E. Klingenmeyer; Richard G. Hansen; Paul E. Nicholson; M. James Gunberg; Thomas M. Taylor; Larry R. Lutjens; Michael B. Shubeck; S & J Acquisition Corp.; Perrigo Company; National Bank of Detroit; and Old Kent Bank and Trust Company, Defendants.

No. 1:96–CV–72.

United States District Court,
W.D. Michigan,
Southern Division.

March 24, 1998.

Robert Charles Timmons, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, Herbert I. Deutsch, Deutsch, Coffey & Metz, LLP, New York City, for Plaintiff.

Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, Terence J. Ackert, William W. Jack, Jr., Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, William G. McGuinness, Fried, Frank, Harris, Shriver & Jacobson, New York City, Cynthia M. York, Dickinson Wright, PLLC, Detroit, MI, Richard A. Glaser, Geoffrey A. Fields, Dickinson Wright, PLLC, Grand Rapids, MI, Douglas S. Liebhafsky, Wachtell, Lipton, Rosen & Katz, New York City, Peter L. Gustafson, Norbert F. Kugele, Warner, Norcross & Judd, LLP, Grand Rapids, MI, for Defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff The Glidden Company, the successor in interest to Grow Group, Inc. ("Grow")[1] brought this action to assert claims arising out of a management-led buyout of Perrigo Co., a former subsidiary of Grow. This matter is currently before the Court on motions for summary judgment filed by Defendant Old Kent Bank and Trust Company ("Old Kent") and Defendant National Bank of Detroit n/k/a NBD Bank ("NBD"). NBD and Old Kent ("the Banks") are named in two counts of Plaintiff's complaint: Count II alleging breach of duty, conspiracy and aiding and abetting, and Count IV alleging fraud.

## I.

### Evidence

The following summary of the relevant evidence is not in dispute. Additional evidence, and facts in controversy, will be addressed and incorporated throughout the opinion as they relate to the analysis.

Grow is a New York corporation that, through divisions and subsidiaries, produces specialty chemical coatings, paints, and household products. In February 1986 Grown acquired 100 percent of the stock of Perrigo, then a privately held Michigan corporation, for $45 million. Perrigo is a manufacturer of generic and private-label pharmaceuticals. As a result of Grow's acquisition of Perrigo, Perrigo became a Delaware corporation.

NBD and Old Kent had an ongoing relationship with Perrigo throughout the 1980s. When Grow purchased Perrigo in 1986, it became the guarantor of Perrigo's notes to NBD and Old Kent.

Grow incurred substantial debt to acquire Perrigo and other consumer private label lines, and by mid-1987 Grow was under pressure to reduce its bank debt. It proposed to do so by making an initial public offering of approximately 25% of Perrigo's stock and enlisted the assistance of investment banking firms, including PaineWebber, to put together the deal. In October 1987, after the stock market prices collapsed, Grow abandoned the public offering of Perrigo stock. The need to reduce debt, however, continued to plague Grow. In November 1987 Grow engaged PaineWebber to be its exclusive financial advisor to raise money through the financial restructuring of Perrigo. One of the objectives in doing a restructuring through Perrigo was to enable Grow to report a gain as of March 31, 1988, and to enable Grow to pay a shareholder dividend.

Grow's managers believed that Perrigo was well managed, fast growing and profitable, but it was not a cash generator. Perrigo's growth required cash, and Grow did not have extra cash available. In order to permit Perrigo to continue its growth, Grow determined that it would be beneficial to both Perrigo and to Grow to arrange for the financing of the Perrigo Company independently of Grow. Grow also wanted to terminate its role as guarantor of Perrigo's debts.

In December 1987, at the direction of Grow, Perrigo established a separate and independent banking relationship with NBD

1. The complaint was filed by Grow Group, Inc. ("Grow"). The Glidden Company acquired Grow in 1995 and has been substituted as plaintiff in the caption of this case. Plaintiff will be referred to in this opinion as "Grow".

and Old Kent. The Banks participated in a $65 million refinancing, including a $45 million revolving credit agreement and a $20 million loan. A portion of the loan proceeds were used by Perrigo to repay its entire debt to Grow. As a result, Grow was released as a guarantor of Perrigo's debts.

Grow then pursued the PaineWebber Restructuring. Under the PaineWebber proposal Grow would retain about 45% of the equity in Perrigo, Perrigo management would acquire about 15% of the equity in Perrigo, and an investor would be found to provide approximately $30 million in subordinated debt in exchange for warrants for 40% of the equity of Perrigo.

In early December 1987 members of Perrigo's management met at various times with representatives of NBD and Old Kent to discuss the December loan to Perrigo. In the course of those discussions Michael J. Jandernoa and James Gunberg, President and Treasurer of Perrigo, respectively, discussed their interest in the possibility of a management-led buyout of Perrigo.

In early January 1988 PaineWebber formally approached NBD to arrange the senior debt for the PaineWebber Restructuring. On February 9, 1988, NBD responded with a proposal that it lead a group of banks in making a loan to Perrigo[2]. PaineWebber lined up Desai Capital Corp. ("Desai") as a potential source of subordinated financing for the PaineWebber Restructuring.

On February 29, 1988, Grow announced a "Cash Conservation Program" to prohibit Grow and its subsidiaries, including Perrigo, from making capital expenditures except in emergencies. There is also evidence that in early March, Grow determined that it could not pay a dividend without violating covenants under its own bank loans.

On March 7, 1988, representatives of NBD went to New York and met with Russell Banks of Grow to discuss the PaineWebber Restructuring. At this time Grow had not yet secured subordinated financing from Desai. During the meeting the subject of a

management buyout was raised. A suggestion was made that Grow sell Perrigo to a management group at Perrigo and that NBD arrange the financing for the sale. Russell Banks called Jandernoa, and advised that Grow would entertain an offer by Perrigo management to purchase the company in place of the proposed PaineWebber Restructuring. On March 11, several members of the Perrigo management team went to New York and met with Russell Banks to discuss the management buyout.

By March 11, Russell Banks considered the PaineWebber deal to be "dead". On March 16, Grow revised its retention letter with PaineWebber to pay a flat advisory fee for PaineWebber's services in connection with the management buyout, rather than the percentage fee for the previously proposed Restructuring. Russell Banks recommended to Grow's board the sale of Perrigo to the Perrigo management group at a board meeting on March 17.

On March 21, NBD formally became the Perrigo Defendants' exclusive representative in arranging interim financing for the acquisition of Perrigo, providing financial advice and consultation and arranging permanent financing for Perrigo after the acquisition.

The members of the Perrigo management team, referred to collectively in Plaintiff's complaint as the "O & D Group", include Defendants Michael J. Jandernoa, William C. Swaney, Ralph E. Klingenmeyer, Richard G. Hansen, Paul E. Nicholson, M. James Gunberg, Thomas M. Taylor, Larry R. Lutjens, and Michael B. Shubeck. These individuals formed "S & J Acquisition, Inc.," a Michigan corporation, for the purpose of completing the management buyout.

On March 21, NBD and the Perrigo Defendants hosted a meeting of bankers to arrange financing for the proposed management buyout. In attendance were representatives from Comerica, NBD, National City Bank (Cleveland), Old Kent, and Pittsburgh National Bank.

---

**2.** The proposal stated:
We propose that National Bank of Detroit act as Agent in arranging the senior debt financing

for the sale of Perrigo Company to an investor group consisting of management and Grow Group, Inc.

On March 23, 1988, Grow and S & J Acquisition (the corporation formed by the Perrigo management) signed a contract for the sale of Perrigo. The contract was to close on March 31. It did not in fact close as scheduled, ostensibly because of difficulties in obtaining the release of Perrigo's common stock from pledge.

On April 15, Grow and Perrigo management (through S & J Acquisition) signed a new contract for the sale of Perrigo for $106 million and scheduled a closing for April 29 in New York. The Buyers represented in the contract that as of the closing date the internal financial information prepared by management of the company for the period from July 1, 1987, to March 31, 1988, was accurate in all material respects. The closing took place in New York on April 29 as scheduled.

Financing for the purchase by the Perrigo Management team was provided by the following banks: NBD, $20 million; Comerica, $17 million; National City Bank, $17 million; Pittsburgh National Bank, $17 million; and Old Kent, $4 million.

## II.

### *Allegations against the Banks*

In Count II of its complaint, Plaintiff asserts a claim of liability against the Banks for breach of duty, conspiracy and aiding and abetting. Plaintiff alleges that the Banks fostered a relationship of trust and confidence with Grow in connection with the Restructuring, that they acted as advisors to Grow in connection with the Restructuring, that they induced Grow to pursue the Restructuring to the exclusion of other alternatives, and that at the same time they secretly entered into a conspiracy with the members of the Perrigo management group to thwart the Restructuring and aided and abetted the Perrigo management group in its purchase of Perrigo at an artificially low price.

In Count IV of its complaint Plaintiff asserts a claim of liability against the Banks for fraud. Plaintiff alleges that the Banks, together with the other Defendants, defrauded Grow in connection with the sale of Perrigo by making material misrepresentations of fact, and/or omitted to disclose material facts in their statements and representations to Grow. Specifically, Plaintiff alleges that the Banks led Grow to believe that they would support the PaineWebber Restructuring; they did not tell Grow that they were simultaneously working with the Perrigo Defendants to fund a management buyout; they advised Perrigo, but not Grow, of potential investors; and they did not tell Grow that the Perrigo Defendants had more optimistic economic predictions that they were sharing with potential investors of a management buyout, but were withholding from Grow. Plaintiff alleges that the Banks provided substantial assistance in connection with the fraud by financing the transaction by which the Perrigo Defendants acquired Grow's interest in Perrigo.

Old Kent has filed a motion for summary judgment on the basis that there is insufficient evidence to show that Old Kent had a legal duty to Grow or knowledge of the Perrigo Defendants' alleged fraud or breach of fiduciary duty, both of which are essential elements of each of Plaintiff's claims. NBD has filed a motion for summary judgment on the basis that Plaintiff cannot establish that NBD owed any legal duty to Grow. Because the Court's analysis with respect to the duty issue applies equally to both Old Kent and to NBD, the Court will address the duty issue first.

## III.

### *Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that

there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

## IV.

### *Choice of Law*

There is no dispute between the parties in this case that because this diversity case was transferred from the Southern District of New York pursuant to 28 U.S.C. § 1404(a), this Court must apply the law that New York would apply, including New York conflicts of law rules. *Glidden Co. v. Jandernoa,* 173 F.R.D. 459, 470 (W.D.Mich.1997). The Parties do not agree, however, what law New York would apply to Plaintiff's various claims.

■ In tort cases New York courts apply an "interests" analysis. *Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2nd Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 959, 136 L.Ed.2d 845 (1997). "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Id.* (quoting *Cooney v. Osgood Mach., Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 922, 612 N.E.2d 277 (1993)).

The Banks contend that for purposes of this motion it is unnecessary to engage in a choice of law analysis with respect to the fraud, conspiracy and breach of duty claims because there is no relevant conflict between the law of Michigan and New York.

Plaintiff contends that this Court should apply Delaware or New York law because Perrigo is a Delaware corporation and the injury was felt in New York. The Court will address the choice of law issues as it addresses each claim.

## V.

### *Breach of Fiduciary Duty*

Plaintiff alleges in Count II that the Banks owed Grow a fiduciary duty. Plaintiff alleges that the Banks acted as advisors to Grow in connection with the Restructuring, that Grow placed trust and confidence in the Banks in connection with the Restructuring, and that the Banks owed to Grow obligations including good faith, fair dealing, full disclosure, and candor, as well as a duty to refrain from self-dealing. Based on the undisputed facts, none of these claims of duty is valid as a matter of law.

Plaintiff contends that its fiduciary duty claim against NBD should be governed by Delaware law because it arises in the context of Grow's attempts to restructure its ownership of Perrigo, a Delaware corporation, and because it is intertwined with NBD's conduct as a conspirator and aider and abettor of the Perrigo Defendants' fraud and breach of fiduciary duties, issues which are governed by Delaware law.

Plaintiff's choice of law analysis unnecessarily blends the various claims. The breach of fiduciary duty claim against the Banks is a distinct claim, and the choice of law to be applied to this claim must be analyzed separately. Delaware has little, if any, interest in regulating Michigan banks under the circumstances presented in this case.

■ Plaintiff's fiduciary duty claim against the Banks grows out of the Banks' relationship with Perrigo and the Banks' role in the PaineWebber Restructuring. The only reasonably interested states would be New York and Michigan. Plaintiff is a New York corporation and it is in New York that Plaintiff allegedly suffered the injury. On the other hand, Defendant Banks are in Michigan, they conduct the majority of their business in Michigan, their relationship to Perrigo was concentrated in Michigan, and Grow sought out the Banks as participants in the Paine-Webber Restructuring because of their long-term relationship with Perrigo in Michigan. Applying the interest analysis methodology

of the New York courts, this Court concludes that Michigan has the stronger interest in the Banks' fiduciary duties to their customers or potential customers. Accordingly, the Court will apply Michigan law to the issue of whether the Banks owed a fiduciary duty to Grow.

As a preliminary matter, it appears that Plaintiff has abandoned its breach of fiduciary duty claim against Old Kent. Grow has not responded to any of Old Kent's arguments on the issue of Old Kent's fiduciary duty in either its response brief or in its sur-reply in opposition to Old Kent's motion for summary judgment.

■ The facts of record support Old Kent's contention that it did not owe Grow a fiduciary duty. Grow never deposited any funds with Old Kent, never borrowed any money from Old Kent, and never received any commitments for funds from Old Kent. The only relationship Grow had with Old Kent was as a guarantor of a loan, from Old Kent to Perrigo. That relationship ended in December 1987. Neither Grow nor Paine-Webber had any contacts with Old Kent regarding the Restructuring. There are no facts from which a rational trier of fact could find a relationship of trust. Accordingly, Old Kent is entitled to judgment on Plaintiff's claim of breach of fiduciary duty.

■ Plaintiff's breach of fiduciary duty claim against NBD fares no better. Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations. *See Ulrich v. Fed. Land Bank of St. Paul,* 192 Mich.App. 194, 200, 480 N.W.2d 910 (1991); *Portage Aluminum Co. v. Kentwood Nat. Bank,* 106 Mich.App. 290, 294–96, 307 N.W.2d 761 (1981) To impose such a duty would be "too radical a departure from well-established, traditional banking laws."

■ As noted by the bankruptcy court in *In re Auto Specialties Mfg. Co.,* 153 B.R. 457 (Bankr.W.D.Mich.), *adopted in part,* 153 B.R. 503 (W.D.Mich.1993):

> The borrower-lender relationship is one of debtor-creditor, and the typical debtor-creditor relationship is not normally one including fiduciary duties.... The fact that the lender is the principal, dominant lender, or that it offered advice or closely monitored the activities of the borrower is not sufficient to establish a fiduciary relationship.

*Id.* at 478–79. The fact that bank customers may have reposed trust in the bank does not give rise to a fiduciary duty. *Id.* "[O]nly where the debtor is so 'easily dominated, old, or weak-minded,' and reliance upon the lender for business making decision is inevitable may a reposing of trust be a basis for finding that there is a fiduciary duty owed." *Id.* Neither Grow nor Perrigo falls into the category of the "easily dominated" whose reliance on the Banks for business decisions was "inevitable."

■ Even if the Court were to apply New York substantive law, the analysis would not change. Under New York law the usual relationship of bank and customer is that of debtor and. creditor, and does not create a fiduciary relationship between the bank and its borrower or its guarantors. *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 318 (2d Cir.1993). "New York law is clear that a fiduciary relationship exists from the assumption of control and responsibility, and is founded upon trust reposed by one party in the integrity and fidelity of another." *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 679 (S.D.N.Y. 1991), *aff'd,* 962 F.2d 1 (2nd Cir.1992). New York courts generally reject the proposition that a fiduciary relationship will arise between parties to a business transaction. *Id.* No special duty arises in the ordinary lending relationship. "[A]bsent special circumstances, a lender does not incur fiduciary obligations toward its debtor." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1483 (2nd Cir.1995). "Where parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Id.* "[T]he mere fact that a corporation has borrowed money from the same bank for several years is insufficient to transform the relationship into one in which the bank is a fiduciary." *Manufacturers Hanover,* 7 F.3d at 318.

■ The undisputed facts reveal that there was no fiduciary relationship or other relationship of trust between NBD and Grow. NBD did not have the kind of relationship with Grow from which such a fiduciary duty could arise. Grow once had a banking relationship with NBD, but terminated that relationship in the 1970's. In 1987 and 1988, when the events giving rise to this suit took place, Grow did not have any funds deposited with NBD, did not have a loan from NBD, and had not received any commitments for funds from NBD. Although Grow was the guarantor on a Perrigo loan, that relationship ended in December 1987. NBD's relationship with Perrigo did not make it a fiduciary to Perrigo, much less to Perrigo's owner, Grow.

Grow was a sophisticated company. It had an experienced Board of Directors, and a sophisticated management team. Grow had superior access to Perrigo's financial information. Representatives of Grow sat on Perrigo's Board and attended Perrigo's planning meetings. Grow also employed the assistance of professional investment banking firms, including PaineWebber, to provide financial advice.

Grow hired PaineWebber to be its *exclusive* financial advisor in connection with the financial Restructuring of Perrigo. Paine-Webber sought NBD's assistance in providing senior financing for the Restructuring, but neither Grow nor PaineWebber contracted with or requested any services of NBD that would give rise to a special duty. Neither Grow nor PaineWebber looked to NBD for advice.

Plaintiff asserts that the Banks owed a "duty of good faith, fair dealing, full disclosure, and candor, as well as a duty to refrain from self-dealing," in its relations with Grow, but Plaintiff has offered no law in support of this proposition. Instead, Plaintiff's contention that the Banks owed a fiduciary duty to Grow is supported only by the testimony or reports of its experts.

Plaintiff's experts have opined that 1) Grow was a customer of NBD because of the bank's dealings with Perrigo, its subsidiary; 2) NBD owed a duty of honesty and loyalty to Grow on the basis of its proposal to Paine-Webber that it would use its best efforts to secure senior financing; 3) by encouraging PaineWebber and Grow to provide it information on their needs for mezzanine financing and what they could contribute for equity participation, NBD encouraged reliance by Grow on the bona fides of the relationship with NBD that it would not harm them and would be helpful to them; and 4) Grow was the moving force behind the December refinancing and was the beneficiary of the loan because the loan was used to pay off Perrigo's debts to Grow.

■ Plaintiff's reliance on its experts for a statement of the law is misplaced. Experts may give their opinion regarding practices in the banking business and the corporations and security business, but their opinions do not control the legal obligations of the various players in this case. *Heflin v. Stewart County,* 958 F.2d 709, 715 (6th Cir.), *cert. denied,* 506 U.S. 998, 113 S.Ct. 598, 121 L.Ed.2d 535 (1992).

> Experts are supposed to interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations ... Jurors might be confused by opposing opinions of law offered by different experts.

*United States v. Curtis,* 782 F.2d 593, 599 (6th Cir.1986).

Indeed, it was deemed error for the court to allow plaintiffs' expert to testify as to the requirements of federal securities disclosure laws in *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 919 (6th Cir.1991).

■ Neither can Plaintiff assert a fiduciary claim against NBD on the basis of Grow's stock interest in Perrigo. Such a claim would be derivative in nature. In *NBD Bank, N.A. v. Fulner,* 109 F.3d 299, 301 (6th Cir.1997), the Sixth Circuit rejected a fiduciary duty claim against a bank by shareholders who guaranteed payment of a corporation's notes:

> Insofar as the counterclaim addresses a breach of duty to the corporation, an action

to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. Insofar as the counterclaim seems to attempt to allege injury to defendants, it merely asserts a loss to them as shareholders for diminution in value of their shares. A shareholder's rights are merely derivative unless he can show violation of a duty owed directly to him. Depreciation in value of shareholder's corporate stock is generally not the type of direct personal injury necessary to sustain a direct cause of action.

*Id.* at 301.

The undisputed evidence in this case indicates that NBD entered into negotiations with Grow about the possibility of providing senior financing for the Restructuring. There is no evidence that NBD ever committed to financing the Restructuring. There is no evidence that NBD controlled Grow's assets or operations, that it precluded Grow from dealing with other banks, or that it otherwise exercised powers beyond those of a potential lender-creditor. There are no extraordinary circumstances in this commercial transaction that would give rise to a fiduciary duty from NBD to Grow. Accordingly, NBD and Old Kent are entitled to summary judgment on Plaintiff's claim in Count II that they breached a fiduciary duty to Grow.

## VI.

### *Fraud*

In Count IV of its complaint, Plaintiff alleges that the Banks are liable for fraud. For choice of law purposes, it is clear that the two states with the most interest in this issue are Michigan and New York. Michigan is the home of the Defendant Banks and the location where most, if not all of Defendants Banks' alleged misrepresentations, or omis-

sions occurred. New York is the home of Plaintiff and the place where Plaintiff would feel the effects of Defendant Banks' alleged fraud. It appears, however, that there is not any material conflict between Michigan and New York on the elements of fraud. Accordingly, the Court is not bound to choose which state has the greater interest in this claim.

Under New York law the elements of fraud are the misrepresentation or omission of a material fact, scienter, reasonable reliance, and damage. *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2nd Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). The elements under Michigan law are substantially the same.[3] Under either New York or Michigan law, a plaintiff must prove his allegations of fraud with clear and convincing evidence. *Allen v. WestPoint–Pepperell, Inc.*, 954 F.Supp. 682, 689–90 (S.D.N.Y.1997); *Kovacs v. Electronic Data Systems Corp.*, 762 F.Supp. 161, 166 (E.D.Mich.1990), *aff'd*, 929 F.2d 701, 1991 WL 43936 (6th Cir.1991).

Plaintiff's fraud theory rests on NBD's alleged promise to support the PaineWebber Restructuring, and on the failure of both NBD and Old Kent to disclose material information to Grow. Plaintiff alleges that from November 1987 through March 1988 NBD made material misrepresentations and omissions concerning its participation in and support of the PaineWebber Plan and that both Banks hid from Grow the fact that they were simultaneously working with the Perrigo management Group to effectuate a management buyout and were in possession of financial projections from Perrigo that were more optimistic than those Perrigo had shared with Grow.

NBD contends that the allegation that it falsely led Grow to believe that it would support the PaineWebber Restructuring involves "future promises" which are not fraud

---

**3.** In order to establish a claim for fraudulent misrepresentation under Michigan law, a plaintiff must show:

(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it

with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it, and (6) that he thereby suffered injury. *Kovacs v. Electronic Data Systems Corp.*, 762 F.Supp. 161, 166 (E.D.Mich.1990)(quoting *Hi-Way Motor Co. v. International Harvester*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)), *aff'd*, 929 F.2d 701, 1991 WL 43936 (6th Cir.1991).

as a matter of law. NBD submitted a proposal to PaineWebber to act as Agent in arranging the senior debt financing for the Restructuring. NBD's proposal, however, was not an agreement, and was subject to conditions that were never met.[4]

"An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or existing fact." *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813 (1976). Representations about future events that are promissory in nature are insufficient to establish a claim of fraudulent misrepresentation. *Edelman v. Buchanan,* 234 A.D.2d 675, 650 N.Y.S.2d 874, 876 (N.Y.App. Div.1996).

Plaintiff contends that its position does not depend on any future promise by NBD. Rather, Plaintiff contends that NBD made affirmative misrepresentations of fact of its then-present intent, misleading Grow by virtue of half-truths and partial statements, and hiding material information which it was required under the circumstances to disclose.

Plaintiff's contention that NBD falsely represented that it intended to support the PaineWebber plan is not supported by any evidence of record. Although Plaintiff alleges that Grow abandoned the Paine-Webber Plan as a result of the duplicitous actions of NBD and the Perrigo Defendants, Plaintiff does not support this assertion with any facts. There is no evidence that NBD abandoned the PaineWebber Plan, or took any action to thwart it.

Plaintiff has come forward with no evidence that NBD was unwilling or unable to proceed with the senior financing it had proposed to line up for the PaineWebber Re-structuring. According to Plaintiff, the PaineWebber Plan was not successful because PaineWebber was unable to procure subordinate financing. Plaintiff suggests that NBD knew of some potential subordinate lenders and Plaintiff blames NBD for not sharing its potential sources of subordinate financing with Grow.[5] Getting subordinate financing, however, was not NBD's duty under the PaineWebber Plan. Subordinate financing was PaineWebber's concern. The undisputed evidence reveals that NBD's proposed role in the PaineWebber Plan was to act as Agent in arranging the senior debt financing. No mention is made in the record of any greater role for NBD. There is no evidence to suggest that NBD ever offered or was asked to provide subordinate financing for the Restructuring. NBD's failure to share its information about potential subordinate lenders is not evidence of an intention not to support the PaineWebber Plan.

Grow contends that the inability to obtain subordinate financing was due to Perrigo's failure to produce requested information regarding capital expenditures.[6] There is no evidence in the record, however, to suggest that Perrigo's alleged withholding of this information was done with NBD's knowledge or encouragement.

None of the evidence of record points to any torpedoing of the PaineWebber Restructuring by NBD. There simply is no evidence in the record to suggest that NBD misrepresented an intent to work with Grow on the PaineWebber Plan.

Old Kent was first asked to consider a participation in the PaineWebber Restructuring proposal in early March 1988. On March 7, 1988, Ed Berry, an Old Kent credit ana-

---

4. NBD's February 9, 1988, letter to Raj Srikanth at PaineWebber, reads as follows:

 We propose that National Bank of Detroit act as Agent in arranging the senior debt financing for the sale of Perrigo company to an investor group consisting of management and Grow Group, Inc. Attached is a summary sheet detailing general terms and conditions.

 The attached terms and conditions do not represent a commitment by National Bank of Detroit. They are subject to further modifications as we complete our due diligence and have further discussions with the parties involved.

 The covenant levels are based on the latest projections supplied to us and are subject to change with projection revisions.

5. Plaintiff contends that NBD hid from it the potential for obtaining subordinate financing from the Hillman Group and Bankers' Trust.

6. Raj Srikanth of PaineWebber stated that Paine-Webber had the ability to do the deal but lacked time. He suspected the reason for Grow's emphasis on moving quickly was due to pressure from Grow's banks to pay down its debt.

lyst, gave the proposal an unfavorable analysis.[7] On March 10, 1988, Grant recommended that Old Kent not participate in the PaineWebber Restructuring or that it consider a smaller participation in the revolving credit. The record reflects no communication. by Old Kent to Grow regarding the PaineWebber Restructuring that can be construed as a misrepresentation of a past or existing fact.

Plaintiff's alternative fraud theory is that NBD and Old Kent failed to disclose certain information to Grow. Plaintiff alleges that the Banks failed to inform it of the Perrigo management group's plan to undertake a management buyout financed by the Banks and failed to inform them that the Perrigo management group was not turning over the most up to date financial projections to Grow.

▉ Nondisclosures do not constitute fraud unless there was a duty to speak under the circumstances. *Wall Street Transcript Corp. v. Ziff Communications Co.*, 225 A.D.2d 322, 638 N.Y.S.2d 640, 641 (N.Y.App. Div.1996). *See also Sheldon Co. Profit Sharing Plan and Trust v. Smith*, 858 F.Supp. 663, 671 (W.D.Mich.1994)("a successful claim of silent fraud requires proof that (1) defendant was under a legal or equitable duty to disclose; and (2) that defendant failed to speak when that duty so required.").

▉ "[A] concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose. Such a duty ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir.1995) (cita-

tions omitted). This Court has already determined above that there was no fiduciary relationship between the Banks and Grow that would give rise to a duty of disclosure in this case.

▉ In the absence of a fiduciary relationship a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, or (2) one party possesses superior knowledge, not readily available to the other and knows that the other is acting on the basis of mistaken knowledge. *Remington Rand,* 68 F.3d at 1484.

The duty to disclose discussed in *Remington Rand* arose in the context of the duties of parties to a contract.[8] In *Remington Rand* the plaintiff and defendant banks were parties to a release by which Remington relinquished all claims it might have against the banks. *Id.* at 1483. The reference to the possession of superior knowledge in *Remington Rand* does not stand for the proposition that a third party, an outsider to the contract, has a duty to make disclosures when it knows that one party to the contract may be acting on the basis of mistaken knowledge.

▉ As explained in *Allen, supra,* New York recognizes a claim for fraudulent omission. 954 F.Supp. at 689. "[N]ondisclosure is tantamount to an affirmative misrepresentation where a party to a transaction is duty-bound to disclose certain pertinent information." *Id.* (quoting *Callahan v. Callahan,* 127 A.D.2d 298, 514 N.Y.S.2d 819, 821 (N.Y.App.Div.1987)). Again, an element of this cause of action is that the plaintiff and

---

7. Ed Berry's March 7, 1988 memorandum to Robert Grant states as follows:

 Perrigo's liquidity position doesn't change much, but by using short term financing to fund negative cash flows until 1992, Perrigo debt to worth ratio grows to very high levels. This causes interest coverage to fall dramatically, greatly increasing the riskiness of the firm.

 The real problem in this proposal is the high leverage that Grow is forcing upon Perrigo. A softening of the market would greatly impair Perrigo's ability to meet debt service as would an upward swing in interest rates.

8. *Remington* cites *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2nd Cir.1984), which provides:

 During the course of negotiations surrounding a business transaction, a duty to disclose may arise in two situations: first, where the parties enjoy a fiduciary relationship, and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

 *Id.* at 123 (citations omitted).

the defendant were parties to a contract or transaction. *Id.*

In *Smith v. American Nat. Bank and Trust Co.,* 982 F.2d 936, 943 (6th Cir.1992), the Sixth Circuit rejected a silent fraud claim by an investor against a bank that had encouraged an auto dealership to find an investor, even though the court assumed, for purposes of granting a summary judgment motion, that the bank had knowledge of a check-kiting scheme at the dealership. *Id.* at 943. The fraud claim was rejected on the basis that the plaintiff was unable to show that the material facts about which he contended he was unaware were not readily available to him. *Id.*

> Our case law makes it very clear that "[a] fiduciary relationship cannot be predicated on one party's superior knowledge of the facts surrounding a transaction when the relevant facts are readily available to both parties." *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1408 (6th Cir. 1991). We affirmed a summary judgment for the defendant in *Aschinger* where "the material facts about which plaintiff contends he was unaware were readily available to him as well as to defendant" and where the plaintiff never inquired about the information possessed by the defendant. *Id.* at 1407.

*Id.* at 943.

 NBD had no duty to disclose to Grow because Grow had superior access to Perrigo's financial records and Grow never inquired of NBD about Perrigo's financial status.

It is not uncommon for banks to be held liable for silent fraud when they profit at a borrower's expense by withholding material information from the borrower. *See e.g.,* cases cited in *In re Cara Corp.,* 148 B.R. 760, 775 (Bankr.E.D.Pa.1992). Absent such a lending relationship, however, the Court is aware of no basis for requiring a bank to disclose information about its borrower to those with whom the borrower is doing business.

In this case, neither NBD nor Old Kent was a party to the negotiations or contract for the sale of Perrigo to the Perrigo man-

agement group. The Banks' failure to inform Grow of any alleged misrepresentation by the Perrigo Defendants does not make the Banks liable for fraud because they did not have a duty under the circumstances to make any disclosures to Grow.

The evidence of record is not sufficient to support an allegation of fraud against the Banks. Accordingly, the Banks are entitled to summary judgment on Count IV, the Fraud count, and Count IV must be dismissed.

### VII.

#### *Aiding and Abetting and Conspiracy*

Plaintiff alleges in Count II that the Banks aided and abetted the Perrigo management group and joined in a conspiracy to help the Perrigo Defendants breach their fiduciary duties to Grow and to defraud Grow.

 This Court agrees with Plaintiff that the aiding and abetting and conspiracy claims should be analyzed according to the law that governs the underlying substantive claim, i.e., fraud and breach of fiduciary duty. *See Bernstein v. Crazy Eddie, Inc.,* 702 F.Supp. 962, 986 (E.D.N.Y.1988)("Since Delaware law will determine whether the individual defendants breached their fiduciary obligations ... Delaware law should determine whether third-party defendants conspired with them to assist in that breach."), *vacated on other grounds,* 714 F.Supp. 1285 (E.D.N.Y.1989).

The fraud allegations against the Perrigo Defendants are governed by either Michigan or New York law. The parties disagree as to which law should apply, but it does not appear that the choice of law will make any difference in the court's analysis. For purposes of this motion the Court will assume that the claim for aiding and abetting fraud is governed by New York law.

 To maintain a claim for aiding and abetting fraud, plaintiff must show:

> (1) the existence of a ... violation by the primary (as opposed to the aiding and abetting) party; (2) "knowledge" of this violation on the part of the aider and abettor; and (3) "substantial assistance" by the

aider and abettor in the achievement of the primary violation. *Oei v. Citibank, N.A.,* 957 F.Supp. 492, 520 (S.D.N.Y.1997).

Because Perrigo is a Delaware corporation and the fiduciary duties of the corporations' officers and directors toward its shareholders is governed by Delaware law, Plaintiff's claim against the Banks for aiding and abetting breach of those fiduciary duties should also be governed by Delaware law.

Under Delaware law a third party who knowingly participates or joins in the breach of a fiduciary's duty becomes liable to the beneficiaries of the trust relationship. *Mills Acquisition Co. v. Macmillan, Inc.,* 559 A.2d 1261, 1284 n. 33 (Del.Supr.1989); *Gilbert v. El Paso Co.,* 490 A.2d 1050, 1057 (Del.Ch.1984), *aff'd,* 575 A.2d 1131 (Del. Supr.1990). The elements for aiding and abetting a breach of fiduciary duty or for a civil conspiracy for breach of a fiduciary's duty are:

> (1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) knowing participation in that breach by the party not in direct fiduciary relationship. A fourth element, the allegation of damages resulting from the action of the conspiracy parties, also is required.

*Gilbert,* 490 A.2d at 1057.[9]

Plaintiff's conspiracy claim is not conceptually distinct from its aiding and abetting claims. New York cases have stated that New York does not even recognize a separate claim for civil conspiracy. *Wall Street Transcript,* 638 N.Y.S.2d at 641. Under Michigan law, in a civil action for damages from a conspiracy, "the gist or gravamen of the action is not the conspiracy but is the wrongful acts causing the damage. The

conspiracy standing alone without the commission of acts causing damage would not be actionable." *Roche v. Blair,* 305 Mich. 608, 614 9 N.W.2d 861 (1943).

Plaintiff's aiding and abetting claims with respect to fraud and breach of fiduciary duty are also substantially the same.[10] Plaintiff alleges that in or about February 1988 or prior thereto, NBD and Old Kent entered into a conspiracy with the members of the Perrigo management group pursuant to which NBD and Kent agreed to advise and aid the members of the Perrigo management group in their efforts to thwart the Restructuring, divert to themselves corporate opportunities pertaining to the Restructuring, deceive Grow, and acquire Grow's stock in Perrigo for themselves.

An essential element of a claim of an aiding and abetting is that the defendant provide "substantial assistance." One provides "substantial assistance" if he "affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed." *Kolbeck v. LIT America, Inc.,* 939 F.Supp. 240, 247 (S.D.N.Y.1996)(quoting *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 284 (2nd Cir.1992)).

The Restatement Second of Torts similarly requires substantial assistance:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he . . . (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . .

Restatement Second of Torts, § 876(b).

To survive summary judgment, Plaintiff is required to come forward with some evidence

---

**9.** New York law applies the same legal standards. One asserting a claim for inducing or participating in a breach of fiduciary duty must prove:

> (1) a breach by a fiduciary of obligations to another,
> (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach.

*Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2nd Cir.1986).

**10.** "The fraud complained of is intimately intertwined with the breach of fiduciary duty claimed against the Perrigo Defendants, NBD and Old Kent. Much of the same conduct which gives rise to the claim of breach of duty is also that which gives rise to the fraud claim, or at the least serves as underpinning for the fraud." (Plaintiff's Consolidated Memorandum in Opposition to NBD's Motions for summary Judgment, p. 39).

from which a jury could reasonably find that the Banks substantially assisted the Perrigo management group in its fraud and breach of its fiduciary duties.

Most of the evidence Plaintiff has offered in support of its aiding and abetting claims falls into the category of the Banks' failure to act. Plaintiff has alleged that the Banks (1) never told Grow, when approached to participate in the PaineWebber Plan, that they had already been consulted with respect to a separate transaction regarding Perrigo; (2) never disclosed the availability of potential sources of subordinated financing to Grow; and (3) kept their knowledge of Perrigo's revised and more optimistic financial projections from Grow.

■ Under New York law, in the absence of a confidential or fiduciary relationship between plaintiff and defendant giving rise to a duty of disclosure, the defendant's silence does not amount to the substantial assistance that is a required element of aider or abettor liability. *See King v. George Schonberg & Co.*, 233 A.D.2d 242, 650 N.Y.S.2d 107, 108 (N.Y.App.Div.1996). "[I]n-action, or a failure to investigate, constitutes actionable participation only when a defendant owes a fiduciary duty directly to the plaintiff; that the primary violator owes a fiduciary duty to the plaintiff is not enough." *Kolbeck*, 939 F.Supp. at 247.

In *National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626, 629–30 (N.Y.App.Div.), *app. den.*, 70 N.Y.2d 604, 519 N.Y.S.2d 1027, 513 N.E.2d 1307 (1987), the court rejected an aiding and abetting claim against a law firm that, upon learning of its client's misrepresentations regarding sale and lease transactions, did nothing:

> We know of no case where mere inaction by a defendant has been held sufficient to support aider and abettor liability for fraud. Here, there was no independent duty to act on the part of defendant law firm. Manifestly, there was no fiduciary relationship between the law firm and the bank. Nor was the firm under any ethical obligation to disclose what knowledge it

might have had concerning its client's alleged impending fraud.

*Id.* 511 N.Y.S.2d at 629–30.

■ Even if, as Plaintiff alleges, the Banks had knowledge that the Perrigo Defendants were not being candid with Grow about their preparation toward a management buyout and the value and future prospects of Perrigo, that would not be sufficient. Because the Banks did not have a confidential or fiduciary relationship that would give rise to a duty of disclosure, the Banks' silence did not amount to the substantial assistance that is a required element of aider and abettor liability.

Because the Banks' failure to act does not support Plaintiff's aiding and abetting claims, the Court turns to Plaintiff's allegations that Defendant Banks' acted affirmatively to assist the Perrigo management group in its fraud or breach of fiduciary duty. The only affirmative acts Plaintiff has alleged are as follows: (1) NBD encouraged Grow's reliance on NBD and forestalled Grow from seeking other sources for senior financing until it was too late; (2) NBD solicited investors in the MBO by giving them new projections that they knew had not been provided to Grow; and (3) the Banks financed the buyout.

As to the first allegation, there is no evidence from which a reasonable juror could find that NBD encouraged Grow's reliance on NBD and forestalled Grow from seeking other sources for senior financing until it was too late. There is no evidence that NBD was not ready and able to provide senior financing for the PaineWebber Restructuring. The evidence reveals that the sticking points for the PaineWebber proposal were the lack of subordinate financing and the ability of Grow to meet its commitments to its lenders and shareholders, not the failure or inability of NBD to provide senior financing. The Restructuring was abandoned by Grow when the alternative of a Management buyout appeared to be more favorable to Grow's immediate financial concerns.

As to the remaining two allegations, i.e., that NBD solicited new investors on the basis of new financial projections that NBD knew had not been given to Grow, and the Banks' financing of the buyout, the Court

must consider whether these allegations are sufficient to constitute aiding and abetting.

In *Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2nd Cir.1986), the court held that Citibank was liable for inducing or participating in a breach of fiduciary duty. Citibank had obtained the consent of two of three partners to the sale of the partnership's sole remaining asset in lieu of foreclosure and distributed the proceeds to the two partners. During this time, although the bank was in frequent contact with Whitney, the third partner, and knew the partnership was on the brink of dissolution, the Bank kept Whitney in the dark regarding the consents from the other two partners and falsely advised Whitney that it had no obligation to pay the partnership any proceeds, notwithstanding the fact that it had agreed to pay the other two partners $200,000. *Id.* at 1110–13.

The court of appeals held that there was ample evidence to support the district court's determination that Citibank had induced or participated in the two partners' breach of fiduciary duty. The bank had actively set out to circumvent Whitney's legitimate interests as a partner. It drafted consents for only two partners, intentionally deceived Whitney, not only through silence, but also through affirmative misrepresentations in response to his legitimate inquiries, improperly paid the partners rather than the partnership, and covered up their actions by backdating the consents and falsifying its own records. *Id.* at 1115–17.

In *Oei* the district court held that the plaintiffs had adequately alleged that one bank provided substantial assistance to another's fraud where they had alleged at least two affirmative misrepresentations by the bank. 957 F.Supp. at 520.

The evidence in this case, viewed in the light most favorable to Plaintiff, still falls far short showing the kind of "substantial assistance" required to support a claim of aiding and abetting. The Banks' dissemination of the most up to date or optimistic figures from Perrigo to potential investors in Perrigo was not improper. Grow was well aware that NBD was financing the Perrigo management group's buyout, and the figures NBD provided to potential investors were obtained from NBD's client, Perrigo.

■ Plaintiff's aiding and abetting and conspiracy claim, when reduced to its essence, rests on Plaintiff's third allegation, i.e., that the Banks provided financing to the Perrigo management group despite their knowledge that the Perrigo management group was breaching its fiduciary duty and was committing fraud on Grow. Assuming Plaintiff can prove these allegations, the Court nevertheless concludes that these allegations do not provide a sufficient basis for holding the Banks liable for aiding and abetting or conspiracy. The Court is aware of no authority for holding a bank liable for financing a client's business undertaking on the basis that the client might be engaged in fraud or breaches of fiduciary duty. A bank cannot be held liable for aiding and abetting fraud or breach of fiduciary duty merely on the basis that it knew that the party it was lending to was not being forthright in its dealings with others. Where, as here, there are no allegations or evidence that the Banks themselves made any misrepresentations or took any actions to affirmatively hide their client's misdeeds, there is no basis for holding the Banks liable for aiding and abetting or conspiracy.

## VIII.

### *Old Kent's Knowledge*

In addition to the foregoing analysis as to duty, there is a separate and independent basis for granting summary judgment to Old Kent. As evidenced by the discussion above, all of Plaintiff's claims against Old Kent require, as an essential element, knowledge of the wrongdoing. Although there is some evidence that NBD knew that Perrigo was withholding some financial information from Grow,[11] there is no evidence that Old Kent had such knowledge.

---

11. Neil Powell, of Bankers Trust, stated in his affidavit that Perrigo management advised him that current projections were old, that new developments could cause income to increase by 70%, that sales numbers could double in the next 2 or 3 years, and that he should not discuss the second set of projections with Grow. Powell contends he discussed his discomfort with the exis-

"[A]ctual knowledge is required to impose liability on an aider and abettor under New York law." *Kolbeck v. LIT America, Inc.*, 939 F.Supp. 240, 246 (S.D.N.Y.1996). "[K]nowledge of the fraud, and not merely the undisclosed material facts, is indispensable." *Murphy v. McDonnell & Co.*, 553 F.2d 292, 295 (2nd Cir.1977); *Hirsch v. du Pont*, 553 F.2d 750, 759 (2nd Cir.1977). "A plaintiff's case against an aider, abetter, or conspirator may not rest on the bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators." *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir.1986).

To prevail under any of the theories of liability advanced by Grow—conspiracy, aiding and abetting, or participating in a fraud—Plaintiff must demonstrate that Old Kent knew about the alleged wrongdoing of the Perrigo Defendants, including the alleged concealment from Plaintiff of materially better projections allegedly prepared by Perrigo's management.

Old Kent has presented the affidavit of Robert Grant, who states as follows: "I do not recall any discussion of a more optimistic set of projections, either during the March 21, 1988, meeting or at any other time prior to the completion of the management buyout. I was neither told nor did I at any time believe that Perrigo management was withholding from Grow material information about the future prospects of Perrigo."

Old Kent's actions are consistent with Grant's statement. Old Kent had a limited involvement in the management buyout. Its participation in the loan for the management buyout was limited to $4 million of credit. As a result of the management buyout, Old Kent's business with Perrigo was substantially reduced.

In response to a motion for summary judgment, Plaintiff "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir.1993)(citing *J.C. Bradford*, 886 F.2d at 1479–80).

Plaintiff has presented no direct evidence that Old Kent knew of the alleged wrongdoing. In order to rebut or contradict the Bank's assertion that it had no knowledge of any wrongdoing by the Perrigo management group, Plaintiff relies on the following circumstantial evidence: Old Kent's knowledge of Jandernoa's interest in a management buyout in December 1987; Grant's notations on the financial projections distributed at the March 21 investors meeting with NBD that figures were old and that the projections would be easy to achieve; and Grant's notes of the meeting indicating that Perrigo had several acquisition opportunities that it deemed to be potentially very lucrative.

Evidence that the Perrigo Defendants were more optimistic about their business prospects than reflected by their formal financial projections is not evidence of any wrongdoing. The evidence is wholly insufficient to show that Old Kent knew that Perrigo had materially improved business opportunities that were intentionally being withheld from Grow.

Plaintiff attempts to make up for its lack of proof that Old Kent had knowledge of the Perrigo Defendants' alleged wrongdoing by attributing NBD's knowledge to Old Kent. Plaintiff contends that because NBD was the agent bank for purposes of financing the buyout, Old Kent is chargeable with any knowledge NBD had regarding the Perrigo Defendants' business prospects and the withholding of same from Grow.

NBD acted as an agent bank for purposes of putting together the financing for the management buyout. The agency was for a very limited purpose: to enable NBD to pass along information about its

---

tence of two sets of projections with members of NBD.

Gerard Heinen of NBD also testified that he was aware of a second set of financial projections for Perrigo which were not to be disclosed to Grow.

customer, Perrigo, to the participating banks. Grow was not a party to either the agency relationship or to the financial transaction for which the agency was formed. Plaintiff has cited no legal authority in support of its proposition that a third-party to the transaction, such as Grow, can impute the knowledge of an agent bank to the participating banks, particularly when such knowledge was not material to the purpose of the agency [12]. Recognition of Plaintiff's novel theory would introduce chaos to the nation's banking practice, as no bank would consider entering into a participatory loan, if it would thereby be subject to an imputation of knowledge of all matters known to the lead or agent bank on matters wholly unconnected to the purpose of the agency relationship. The Court will not impute to Old Kent all knowledge allegedly held by NBD.

Because there is no evidence that Old Kent had knowledge of any alleged wrongdoing on the part of the Perrigo Defendants, Old Kent is entitled to summary judgment based upon this second, alternative ground of a lack of knowledge of the alleged wrongdoing that forms the basis for Plaintiff's claims.

## IX.

### *Conclusion*

For the reasons stated in this opinion, the Court concludes that for all of Plaintiff's creative and sometimes reckless allegations, Plaintiff has not come forward with any evidence to support its various claims against either NBD or Old Kent. NBD and Old Kent's motions for summary judgment will accordingly be granted, and all of Plaintiff's claims against the Banks will be dismissed.

---

12. Curiously, Grow has not attempted to impute such knowledge to the other banks who partici-

pated in financing the buyout at a much higher level than Old Kent.